UNITED STATES of America, Plaintiff–Appellee,

v.

Thomas M. MONSOOR, Defendant– Appellant.

No. 95–1898.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1995.

Decided March 1, 1996.

Larry Wszalek (argued), Peggy A. Lauten-schlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Joseph L. Sommers (argued), Madison, WI, for Defendant–Appellant.

Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Thomas Monsoor was convicted of violating the Lacey Act, 16 U.S.C. § 3372(a)(2)(A), when he sold in interstate commerce over 100 pounds of catfish that had been caught in violation of a Wisconsin natural resources regulation. He challenges his conviction on the ground that the government failed to prove an element of his offense. He also claims that the district court erred in denying his motion to dismiss the indictment on the grounds of vindictive and selective prosecution. We affirm.

## I.

In August 1994, Monsoor was convicted by a jury of removing and selling in interstate commerce more than 100 pounds of catfish in violation of Wisconsin Administrative Code, NR 21.12(b), which provides:

> Licensees may not take more than 100 lbs of catfish per day, 15 inches or over in length from the Saturday nearest October 1 to April 30 in seines.[1]

The government's case against Monsoor included evidence that he had taken more than 100 pounds of catfish, that he had done so by way of a seine, and that he had sold the fish in interstate commerce. The government presented no evidence, however, regarding the length of the catfish that Monsoor had taken. At the close of the government's case, Monsoor therefore moved for acquittal based on the government's failure to prove that the fish he had removed were "15 inches

1. A "seine" is "a large net with sinkers on one edge and floats on the other that hangs vertically in the water and is used to enclose fish when its ends are pulled together or are drawn ashore." *Webster's Ninth New Collegiate Dictionary* 1064 (1983).

or over in length." Acknowledging that its case lacked this proof, the government argued that fish length was not a necessary element in establishing the regulatory violation. The district court agreed and denied Monsoor's motion. The court explained:

> The reference to 15 inches or longer only reiterates the requirement that commercial fishers may not take any fish of any quantity that are shorter than 15 inches; it cannot be read as allowing the taking of more than 100 pounds of small game fish without reading out of the regulation the conservation purpose that animates it. I conclude that it was unnecessary for the government to establish the size of each fish that made up the more than one hundred pound quantity that the defendant sold in interstate commerce.

■ The force of this reasoning becomes clear when section NR 21.12(b) is read in the context of the entire regulation that contains it. The best starting point for this analysis is section NR 21.11, which is entitled "Commercial fishing restrictions," and, in subsection (a), provides that "[a]ll game fish taken with any net or setline must be immediately returned to the water as soon as they appear in the operation." [2] "Game fish" is defined in Wis.Stat. § 29.01[3] as "all varieties of fish except rough fish and minnows." [4] Thus, the regulation of commercial fishing begins with a prohibition; no fish except rough fish and minnows may be taken by commercial fishers. The rest of the commercial fishing regulation then concerns itself with exceptions to this rule. "Commercial fish," those that may be taken by commercial fishers, are defined in this way:

> Commercial fish include species of rough and detrimental fish as defined by this chapter, shovelnose (hackleback) sturgeon 25 inches or over in length taken only on setlines, catfish 15 inches or over in length or 12 inches and over dressed and bullheads of any length when taken with commercial fishing gear and all taken while fishing under a commercial fishing license on the Mississippi river.

NR 21.02(2). From the category "all varieties of fish," which commercial fishers are prohibited from taking, then, is carved an exception, "commercial fish," which they may take. This exception includes "catfish 15 inches or over in length." [5] Catfish that are less than 15 inches in length are not among the exceptions to "all ... fish," which may not be commercially removed. They may not be taken by commercial fishers at all.

Within this general framework comes section NR 21.12, which addresses the gear that commercial fishers may use to remove fish. It lists various types of gear that are permissible, and along with each the precise uses to which it may permissibly be put. Within this list is subsection (b), which addresses the use of seines. Among the restrictions on seine use is that which formed the basis of the government's case against Monsoor. It prohibits the use of a seine to take "more than 100 lbs of catfish per day, 15 inches or over in length."

Read in context, the meaning of this language is clear. The regulation is permissive. Prohibiting commercial fishing in general, it allows commercial fishers to remove catfish that are more than fifteen inches in length. They may use a seine for this purpose, but if they do so, they may take only 100 pounds of

---

**2.** Subsection (g) of that same section reiterates the prohibition:

> A licensed commercial fisher or any member of the crew or any person in or on the boat shall not have in possession any game fish while operating licensed commercial gear or when traveling to or from the operation of such gear while on the waters.

**3.** Title 29 of the Wisconsin Statutes is addressed to "Fish and Game." It contains Wis.Stat. § 29.33, which authorizes the Department of Natural Resources to regulate commercial fishing, as it has done by way of the regulations involved here. The regulations' definitional sec-

tion makes clear that they are to be read within the context of the broader statutory scheme (see NR 21.02), and the regulations contain frequent citation to various Title 29 sections. Section 29.01 contains the general definitions that are relevant to Title 29.

**4.** Catfish are not among those described as "rough fish." See id.

**5.** It also includes catfish that are "12 inches and over dressed." The parties have not addressed this aspect of the regulation, and it does not affect the outcome here.

fish per day. They may not take catfish that are less than fifteen inches in length, by way of a seine or otherwise. In proving that Monsoor exceeded the permission granted by NR § 21.12(b), then, the government was not required to prove that the fish he removed were longer than fifteen inches. If Monsoor removed more than 100 pounds of catfish of any length, he exceeded the permission granted by the regulation, and no further proof was required.

## II.

Monsoor also appeals the district court's denial of his motion to dismiss for vindictive and selective prosecution, arguing that at the very least he should have received an evidentiary hearing on this issue. Monsoor believes that the Wisconsin Department of Natural Resources had a vendetta against him because he had successfully challenged several of its citations and had publicly criticized the Department. As evidence of this vendetta, Monsoor showed that he received many more DNR citations during the period following his clashes with the Department than he had before that time. As evidence of selective and vindictive prosecution, Monsoor points to the facts that he was the only one of four participants in the catfish haul to be prosecuted and that similar Lacey Act violations were not generally prosecuted in the Western District of Wisconsin.

 To obtain a hearing on a claim of vindictive or selective prosecution, a defendant must " 'offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment.' " *United States v. Benson,* 941 F.2d 598, 611 (7th Cir.1991) (applying the test to vindictiveness claim) (quoting *United States v. Heidecke,* 900 F.2d 1155, 1160 (7th Cir.1990)); *see also, United States v. Cyprian,* 23 F.3d 1189, 1195 (7th Cir.1994) (applying the same test to selective as well as vindictive prosecution claims.) Specifically, selective prosecution requires a showing that the defendant "(1) ... [was] singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of

constitutional rights." *Cyprian,* 23 F.3d at 1195. Vindictiveness can also be established by showing that a prosecution was pursued in retaliation for the exercise of a protected statutory or constitutional right. *United States v. Goulding,* 26 F.3d 656, 662 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 673, 130 L.Ed.2d 605 (1994); *Cyprian,* 23 F.3d at 1195; *United States v. Dickerson,* 975 F.2d 1245, 1250–51 (7th Cir.1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1316, 122 L.Ed.2d 703 (1993). The relevant inquiry for this claim is whether "(1) the prosecutor harbored genuine animus; and (2) absent this motive, defendant would not have been prosecuted." *Cyprian,* 23 F.3d at 1195 (citing *Dickerson,* 975 F.2d at 1250.)

 Monsoor's selectiveness claim was properly rejected because he failed to establish that he was singled out for prosecution while other similarly situated individuals were not prosecuted. In response to Monsoor's motion for dismissal, the government submitted evidence showing that the DNR and the United States Fish and Wildlife Service, which was also involved in the investigation, had actually submitted the names of three individuals and one wholesale fish dealer to the United States Attorney in connection with the catfish charges. According to the government, it eliminated the other parties because it had no evidence linking them to the interstate transport of the illegally obtained catfish, a necessary element for federal Lacey Act charges. Because the government was able to connect Monsoor with the interstate transportation, he was not in a similar position vis-a-vis the federal charges as the other parties. In addition, the government submitted evidence of numerous other Lacey Act violations in similar cases that it had prosecuted in recent years. Having failed to present any evidence that his prosecution was selective, Monsoor was not entitled to an evidentiary hearing on this claim.

As for vindictiveness, Monsoor fares no better. The evidence that Monsoor submitted pertained solely to the alleged vendetta of the Wisconsin Department of Natural Resources. Monsoor presented no evidence suggesting that the United States Attorney

or any of her assistants harbored animus against him or acted with vindictive motives in pursuing the prosecution. Indeed, he admits that they did not. Instead, the United States was culpable only indirectly under Monsoor's theory, implicated by having "accept[ed] recommendations for prosecutions referrals motivated by special agents for illegitimate reasons." (R. 26.)

■■ But the animus of a referring agency is not, without more, imputed to federal prosecutors. A defendant must show that the ill will, whoever its bearer, actually motivated his prosecution. Thus, to connect the animus of a referring agency to a federal prosecutor, a defendant must establish that the agency in some way prevailed upon the prosecutor in making the decision to seek an indictment. In *Goulding*, for example, a tax fraud defendant sought dismissal of his indictment claiming that his prosecution was in retaliation for a lawsuit that he had filed against several IRS agents. We affirmed the district court's denial of Goulding's motion, explaining:

> [E]ven if Goulding could convince this Court that Agents Dietz and Feinglass harbored ill will towards Goulding, Goulding failed to demonstrate that these agents had any influence on the bringing of this prosecution. In fact, it is clear the agents were not involved in the decisions to begin a criminal investigation or to prosecute— Goulding, however, makes no claim that the prosecutors who actually made the decision to bring charges against him acted vindictively.

26 F.3d at 662.

In *United States v. Bernal*, 28 F.3d 630, 632 (7th Cir.1994), the defendant had refused to plead guilty to state firearm charges and subsequently was indicted by the United States for being a felon in possession of a firearm. He argued that the federal prosecution should have been dismissed because it was pursued in retaliation for his refusal to plead guilty on the state charges. Because Bernal had presented no evidence to suggest a connection between the alleged anger of the state actors and the federal prosecutors, however, we affirmed the district court's denial of his motion.

As in *Goulding* and *Bernal*, Monsoor has submitted no evidence suggesting that the DNR agents, whether or not ill-inclined toward Monsoor, prevailed upon the United States Attorney in her decision to indict him for violating the Lacey Act. Indeed, the DNR submitted four names to the United States Attorney, and there is no evidence that the two agencies collaborated in any way thereafter. Having presented no evidence suggesting that his prosecution was vindictively motivated, Monsoor was not entitled to an evidentiary hearing on this issue, and his motion was properly denied.

Monsoor argues that a contrary result would be supported by the decision of the Sixth Circuit in *United States v. Adams*, 870 F.2d 1140 (6th Cir.1989). In that case, the defendant Adams had brought a sex discrimination lawsuit against the Equal Employment Opportunity Commission and was subsequently indicted on federal tax fraud charges. Adams sought dismissal, alleging that the criminal charges were being pursued in retaliation for her suit against the EEOC. Although the court did in that case remand for discovery on the vindictiveness issue, it did not, as Monsoor argues, adopt a rule contrary to the one we rely on here. Instead, the court limited the question for discovery to whether "the EEOC was able to prevail upon the Department of Justice to institute a prosecution that [otherwise] would not have been undertaken." 870 F.2d at 1146. Moreover, Adams' claim was supported by evidence that the EEOC had indeed "instigated and pushed" the prosecution in retaliation for her lawsuit. (*Id.* at 1141.) This fact presumably contributed to the court's determination that further discovery on the issue was necessary. *Adams* is therefore of no help to Monsoor, whose motion was properly denied.

### III.

Fish length was not a necessary element of the government's case against Monsoor, and he presented no evidence that would have entitled him to an evidentiary hearing on the

issue of vindictive or selective prosecution. His conviction is AFFIRMED.