**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert V. SPEARS, Defendant–Appellant.**

No. 98–1125.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1998.

Decided Nov. 2, 1998.

---

Timothy M. Morrison (argued), Judith A. Stewart, Office of United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Robert W. Hammerle (argued), Hammerle, Foster & Long–Sharp, Indianapolis, IN, for Defendant–Appellant.

Before BAUER, MANION and KANNE, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Robert V. Spears of one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Spears to 105 months imprisonment followed by three years of supervised release. Spears now appeals, claiming that his conviction should be vacated because: 1) the government violated his due process rights by creating an unreasonable pre-indictment delay; and 2) the indictment was fueled by prosecutorial vindictiveness. In addition, Spears appeals his sentence, asserting that the district court erred in its upward departure. For the reasons set forth below, we affirm Spears' conviction, but vacate his sentence and remand the case to the district court for re-sentencing.

## BACKGROUND

On February 11, 1991, two Indianapolis Police Department ("IPD") officers were called to investigate a disturbance at 432 Oxford Street in Marion County, Indianapolis. When they arrived at the scene, the officers found the defendant, Robert V. Spears ("Spears"), urinating against the garage behind the home. According to the police, Spears tossed a .38 caliber handgun

into the garage after they identified themselves. An indictment was returned to the Marion Municipal Court charging Spears with possessing a firearm without a license in violation of Indiana law. Pursuant to a plea agreement, the State of Indiana dismissed this firearms charge against Spears on August 15, 1991.

More than two years later, in October of 1993, Spears was arrested for the murder of his wife, Robin Spears. He was also charged with possession of a .22 caliber firearm. The case was prosecuted by Amy Barnes ("Barnes") of the Marion County Prosecutor's Office. A jury acquitted Spears of the murder charge, but found him guilty of the firearms charge. As a result of that guilty verdict, the court sentenced Spears to 8 years imprisonment. Spears is currently serving this sentence.

After Spears' acquittal of the murder charge, Detective Paul Arkins ("Arkins") of the IPD ordered a fingerprint and identification check of Spears. Arkins, along with Pat Donovan ("Donovan") of the Bureau of Alcohol, Tobacco and Firearms Division of the Department of the United States Treasury began investigating Spears' February 11, 1991 conduct. Arkins and Donovan played a limited role in the murder investigation of Robin Spears, at which time they contemplated pursuing federal gun charges against Spears, depending on the outcome of the state murder trial. Sometime in September of 1994, Arkins and Donovan interviewed Melissa Zook ("Zook"), a witness in the Robin Spears murder case. Barnes also interviewed Zook after Spears' murder trial, and is alleged to have told her that she was going to "get" Spears at all costs on an additional firearms charge. Zook also stated that Barnes told her that Spears would have no defense to a gun charge brought in federal court for the activity on February 11, 1991 because the only witnesses would be the arresting officers. Barnes does not remember making these remarks, nor does she deny that she made them.

On October 4, 1994, a federal indictment was returned, charging Spears with a violation of Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1) and 924(e), for the activity on February 11, 1991 in Indianapolis. Spears moved to dismiss the indictment because of pre-indictment delay and vindictive prosecution. On July 7, 1995, the district court denied this motion. Spears filed a motion to reconsider, and the court again denied his motion. On September 19, 1995, a jury found Spears guilty of the firearms charge in violation of 18 U.S.C. § 922(g)(1) and he was ultimately sentenced to 105 months imprisonment followed by three years of supervised release. On January 5, 1998, Spears filed a timely notice of appeal.

## ANALYSIS

### I. Pre–Indictment Delay as a Due Process Violation

 Spears argues that his conviction should be vacated because the government's unjustified delay in bringing the indictment almost forty-four months after he committed the offense violated his due process rights. We review this claim for an abuse of discretion. *United States v. Fuzer*, 18 F.3d 517, 519 (7th Cir.1994). While a defendant's primary safeguard against unreasonable prosecutorial delay lies in the applicable statute of limitations, we have also noted that the Fifth Amendment's due process clause plays a limited role in assuring that the government does not subject a defendant to oppressive delay. *United States v. Canoy*, 38 F.3d 893, 901 (7th Cir.1994). For a defendant to successfully assert a due process violation based on an unjustified pre-indictment delay, he must first show that the delay caused actual and substantial prejudice to his right to a fair trial. *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir.1994), *cert. denied*, 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995). In order to prove actual and substantial prejudice, the defendant must show more than mere speculative harm. *Canoy*, 38 F.3d at 902. The allegations of prejudice must be specific, concrete, and supported by the evidence. *Id.* (quoting *United States v. Koller*, 956 F.2d 1408, 1415 (7th Cir.1992)). If the defendant can establish actual and substantial prejudice, the government must then show that the purpose for the delay was not to gain a tactical advantage over the defen-

dant or for some other impermissible reason. *Sowa*, 34 F.3d at 450–51.

Spears claims that the pre-indictment delay actually and substantially prejudiced him for the following reasons: 1) the police dispatch tapes that recorded the officers' transmissions on the afternoon of February 11, 1991 were destroyed; 2) witnesses had either died or were unavailable by the time the trial actually occurred; 3) the only witness Spears could call on his behalf was easily impeachable because that witness was convicted of murder shortly before the trial started, but after the incident on February 11, 1991; and 4) during the delay, Spears accumulated 17 more criminal history points, drastically increasing his sentence. The district court found that Spears failed to show how any of these events actually and substantially prejudiced his right to a fair trial. We agree with the district court's findings.

■ When the IPD officers arrested Spears in February of 1991, they communicated their activity to the police department over the radio. These conversations were recorded on "dispatch tapes." These dispatch tapes were destroyed as a matter of IPD procedure six months after the incident. At trial, Spears contended that it was someone else, and not he, who threw the gun into the garage, and he claims that the destroyed dispatch tapes would have supported this contention. Additionally, Spears claims that the tapes would have provided the identities of the other individuals who were present in the alleyway on that day. However, the district court found that while the tapes may have been helpful to the defense in some small way, they would have been merely cumulative evidence of the officers' testimony at trial that it was Spears who threw the gun into the garage.

We have previously held that a pre-indictment delay which causes evidence to be unavailable will not alone amount to actual prejudice. *United States v. Ashford*, 924 F.2d 1416, 1420 (7th Cir.1991), *cert. denied*, 502 U.S. 828, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991). *See also Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (without a showing of bad faith, destruction of potentially exculpatory evidence does not violate due process). Here, the dispatch tapes were routinely destroyed after six months in accordance with IPD procedure. Spears conceded at oral argument that the government had no duty to notify him of an investigation, much less indict him, within the six month period after the incident until the tapes were destroyed. In addition, Spears had an opportunity to impeach the arresting officers at trial during cross examination, and, indeed, he showed that the officers had only a vague recollection of the events of February 11, 1991. Lastly, the defendant does not assert that he was unaware of the identities of the others present in the alleyway that day, but only that they were unavailable at the time of the trial. The district court did not abuse its discretion when it determined that the destruction of the dispatch tapes did not actually and substantially prejudice Spears.

■ Spears also failed to show how the fact that witnesses were unavailable to testify on his behalf actually and substantially prejudiced him. He claims that Robin Spears, now deceased, and Mike Henson ("Henson"), whose current whereabouts are unknown, would have testified that Russell Yerden ("Yerden"), and not Spears, threw the gun into the garage. However, a defendant must do more than show that a particular witness is unavailable and that the witness' testimony would have helped the defense. *United States v. Doerr*, 886 F.2d 944, 964 (7th Cir. 1989). He must also show that the witness would have testified, withstood cross-examination, and that the jury would have found the witness credible. *Pharm v. Hatcher*, 984 F.2d 783, 787 (7th Cir.1993), *cert. denied*, 510 U.S. 841, 114 S.Ct. 125, 126 L.Ed.2d 89 (1993). At the trial, Yerden himself testified that it was he, and not Spears, who threw the gun into the garage. The district court found that even if Robin Spears and Henson were available to testify, their testimony would merely have been cumulative of Yerden's testimony. Spears presented no specific evidence to the contrary, other than blanket allegations that they would have testified for him and neither had an impeachable criminal record. Because "the absence of cumulative testimony cannot, as a matter of

law, result in actual prejudice," the absence of these witnesses does not amount to actual and substantial prejudice. *United States v. Comosona,* 848 F.2d 1110, 1114 (10th Cir. 1988).

■ Related to the claim that the unavailable witnesses could have presented testimony exculpating Spears, he also claims that had they been available at trial, he would not have called Yerden, a convicted murderer, to testify. While this is a novel argument, it clearly has no merit. The government is under no duty to ensure that a defendant is able to call only credible witnesses on his behalf. Thus, while Yerden's impeachable character may have affected Spears' case, it did not rise to the level of actual and substantial prejudice.

■ Finally, Spears contends that he was actually and substantially prejudiced by the pre-indictment delay because during the time period between the offense and the indictment, he accumulated seventeen more criminal history points by committing other offenses. This claim parallels one of sentencing manipulation. For such a claim to stand, Spears must show that the government had an impermissible motive for delaying the prosecution. *United States v. Wilson,* 962 F.2d 621, 624 (7th Cir.1992). However, as discussed *infra,*[1] the government did not have an impermissible reason for delaying the indictment. There is no evidence that the government delayed its prosecution of Spears so that he could commit more crimes, thus increasing his number of criminal history points. The government is under no obligation to arrest an individual before he commits a crime. In fact, it is impermissible for the government to do so. Nor is the government obligated to "save the defendant from himself." *United States v. Okey,* 47 F.3d 238, 241 (7th Cir.1995). Any sort of prejudice Spears may have suffered was the result of his own criminal conduct, and not from any government misconduct. The district court did not abuse its discretion when it determined that any sort of pre-indictment delay did not actually and substantially prejudice Spears' right to a fair trial.

## II. Prosecutorial Vindictiveness

■ The second issue Spears raises on his appeal is that his conviction should be vacated because the indictment was fueled by prosecutorial vindictiveness. When reviewing a claim of this type, we reverse the district court's factual findings only if they are clearly erroneous, and we will review any legal conclusions *de novo.*

■ The Supreme Court has determined that certain prosecutorial conduct raises a presumption of vindictiveness, which may then be rebutted by the government. *United States v. Goodwin,* 457 U.S. 368, 375–76, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). Ordinarily, this conduct occurs at sentencing, and has the effect of discouraging a defendant from exercising a constitutional right. *Id.* (citing *North Carolina v. Pearce,* 395 U.S. 711, 725–26, 89 S.Ct. 2072 (1969) (holding that there is a presumption of vindictiveness when a harsher sentence is imposed after a defendant exercises his right to a *de novo* review)). However, the Supreme Court has refused to extend the presumption of vindictiveness to pre-trial prosecutorial conduct. *Goodwin,* 457 U.S. at 384, 102 S.Ct. at 2494. Rather, for a defendant to prove vindictiveness on the part of the government for its decision to seek an indictment, he must present objective evidence showing genuine prosecutorial vindictiveness. *United States v. Dickerson,* 975 F.2d 1245, 1251 (7th Cir. 1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1316, 122 L.Ed.2d 703 (1993). The defendant can do this by showing that the decision to prosecute was not based on the usual determinative factors. *United States v. Schoolcraft,* 879 F.2d 64, 68 (3rd Cir.1989), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989).

Spears contends that the government sought the indictment for the arms possession in retaliation for exercising his right to a fair trial for the state murder charge, and his

---

1. *See* the discussion of Spears' prosecutorial vindictiveness claim in Part II of the decision. That discussion will more thoroughly address whether the government's pre-indictment delay was for impermissible reasons.

subsequent acquittal thereof. He claims that Barnes wanted to "get" him because of this acquittal. He also asserts that Barnes provided substantial assistance to the federal authorities in gathering evidence against him. What Spears does not demonstrate is how the federal prosecutor in this case had any actual vindictiveness toward him. Rather, he states that the animus of the state prosecutor, Barnes, should be imputed to the federal prosecutor.

In response to Spears' claim, the trial court held that neither Barnes, nor any of the other individuals involved in the state's murder investigation, possessed the requisite animus against Spears to sustain a claim of prosecutorial vindictiveness. The court found that even if Barnes did claim that she wanted to "get" Spears at all costs and that he would have no defense to a firearms charge in federal court, this behavior does not rise to the level of actual vindictiveness. The court stated that Barnes was merely reciting policy reasons for the federal prosecution. Additionally, the court noted that her comments about the lack of a defense were nothing more than her personal belief in the dynamics of the criminal justice system. While the court stated that Barnes, Arkins and Donovan all had an interest in Spears' prosecution, that was not enough to constitute a vindictive animus for prosecuting Spears for exercising his legal right to a fair trial in the state's murder case against him. Nothing in the record shows that these findings are clearly erroneous.

Even if we decide that Barnes, Arkins and Donovan did act with a vindictive animus, it is well settled that the actions of an investigating agency will not be imputed to a federal prosecutor. *Dickerson*, 975 F.2d at 1251; *United States v. Hastings*, 126 F.3d 310, 314 (4th Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 1388, 140 L.Ed.2d 648 (1998) (holding that unlawful biases of an investigating agency are not imputed to those ultimately responsible for the prosecution); *United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir.1996) (defendant must show that the investigating agency ultimately prevailed upon the prosecution in the decision to seek an indictment). Moreover, it is very difficult to sustain a claim of vindictive prosecution where two separate sovereigns are involved. *United States v. Heidecke*, 900 F.2d 1155, 1159–60 (7th Cir.1990); *United States v. Johnson*, 91 F.3d 695, 698–99 (5th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997) (no vindictiveness on the part of the federal prosecutor for bringing charges for firearms violation after acquittal of state capital murder charges); *United States v. Boone*, 959 F.2d 1550, 1554 (11th Cir.1992) (state's dilatory conduct not imputed to the federal prosecution); *United States v. Bassford*, 812 F.2d 16, 20 (1st Cir.1987), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1909, 95 L.Ed.2d 514 (1987) (same). Thus, absent any evidence that Barnes actually made the decision to prosecute him in federal court, Spears must show that it was the federal prosecutor who possessed the genuine animus against him. The fact that a federal prosecution occurred after an unfavorable result in a state court does not, in and of itself, demonstrate vindictiveness on the part of the federal prosecutor. *United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir.1982), *cert. denied*, 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983). A federal prosecutor has broad discretion, and, while it is not unfettered, it is well within the decision making power to commence a prosecution after the completion of a state proceeding. *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997), *cert. denied*, — U.S. ——, 118 S.Ct. 1103, 140 L.Ed.2d 156 (1998). In the end, it was the federal prosecutor's decision to bring the indictment against Spears. Spears did not present any evidence that the federal prosecutor did not make the ultimate decision to bring the indictment, nor did Spears present any objective evidence of actual animus on the part of the federal prosecutor; we find that the district court acted within its discretion and affirm his conviction.

**III. Sentencing**

Spears claims that the district court erred when sentencing him for two reasons. First, he claims that the court erred in applying his juvenile convictions when determining his criminal history points. Second, he claims that the court's upward departure was unreasonable. We give great

deference to a sentencing court's determinations, and will overturn a factual finding only if we are firmly convinced that a mistake was made. *United States v. Ewing*, 129 F.3d 430, 433–34 (7th Cir.1997). Questions regarding an interpretation of the United States Sentencing Commission Guidelines are reviewed *de novo*. *Id.* at 434. In reviewing a judge's sentencing determination, we must also review his decision to depart from the Guidelines. A judge may upwardly depart when he determines that the criminal history category does not adequately represent the seriousness and extent of the defendant's criminal record or his propensity for committing future crimes. *United States v. Gammon*, 961 F.2d 103, 105–06 (7th Cir.1992). We subject a decision to depart to *de novo* review, and give deference to the extent of the departure. *United States v. Tai*, 41 F.3d 1170, 1176 (7th Cir.1994).

The sentencing judge, based on Spears' Presentence Investigation Report ("PSI"), determined that Spears' base offense level was 14. The offense itself carried a base offense level of 12, with a 2 point enhancement because the firearm in question was stolen. Next, the judge examined all of Spears' prior convictions listed in the PSI and calculated his criminal history score at 39. Included in this calculation were three juvenile convictions. He added one point each for two separate burglaries, one on December 4, 1979 and one on July 9, 1980. The judge also added two points for a theft committed on November 21, 1980. Spears was under 18 years of age when he committed all of these offenses and did not serve any time in prison for these convictions. This calculation resulted in a criminal history category of VI. Since the sentencing judge determined that the criminal history category of VI did not adequately represent either the seriousness of the offense or Spears' criminal history, he elected to depart from the sentencing guidelines. He departed upward one offense level for every three points above 15 of Spears' criminal history calculation, resulting in a base offense level of 22. We have previously approved of this method of upward departure when the defendant's criminal history score far exceeds that of a criminal history category of VI. *United*

*States v. McKinley*, 84 F.3d 904, 911 (7th Cir.1996). The judge then sentenced Spears to 105 months imprisonment, the maximum under the guidelines.

 According to the United States Sentencing Commission Guidelines Manual, only an offense committed before the age of 18 that resulted in a conviction as an adult or that was committed within five years of the instant offense may be included in a defendant's criminal history score. U.S.S.G. § 4A1.2(d). The juvenile offenses used by the sentencing judge in calculating Spears' criminal history do not fit into either of these categories because they neither resulted in an adult conviction, nor were they committed after February 11, 1986. Thus, the sentencing judge should not have included them in his calculation of Spears' criminal history points. *See United States v. Croom*, 50 F.3d 433 (7th Cir.1995) (juvenile convictions committed more than five years before the instant offense may not be counted directly to the criminal history calculation); *Gammon*, 961 F.2d at 107 (same). However, these juvenile offenses may be used to show a pattern of recidivism, thus giving a sentencing judge adequate justification for an upward departure. *Id.* If the district court had not included the juvenile convictions in his calculation of Spears' criminal history points, he would have had 35 criminal history points rather than 39. This, in turn, would have led to a departure of less than 8 base offense levels. Thus, the district court looked at the wrong sentencing range when determining Spears' sentence. We have determined this to constitute plain error. *United States v. Wallace*, 32 F.3d 1171, 1174 (7th Cir.1994). The district court was justified in its upward departure, however, it departed too far. Therefore, we remand the case to the sentencing judge to impose an upward departure based on a criminal history score calculated without the use of Spears' juvenile convictions.

## CONCLUSION

For the reasons set forth above, we affirm Spears' conviction, but vacate his sentence

and remand to the district court for re-sentencing consistent with this opinion.