# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 02-3905 & 02-3906

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RUFINO FALCON,

*Defendant-Appellant.*

———————

**Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
Nos. 2:01-CR-115 & 2:02-CR-38—James T. Moody,** *Judge.*

———————

ARGUED MAY 12, 2003—DECIDED OCTOBER 29, 2003

———————

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Rufino Falcon entered the country illegally and has previously been deported twice. In May 2002, he was convicted by a jury of drug crimes and his sentence included an enhancement for his leadership role in the enterprise. In July 2002, he pled guilty to an illegal reentry charge brought in a separate complaint, after the district court denied his motion to dismiss for vindictive prosecution without conducting an evidentiary hearing. In these consolidated appeals, Falcon challenges the sentencing enhancement and the district court's failure to conduct a hearing on his vindictive prosecution allegation. We affirm the district court's decisions.

## I. BACKGROUND

In July 2002, Special Agent Scott Smith of the Drug Enforcement Agency participated in a narcotics investigation of Jesus Albarado and Miseal Quinones. When Agent Smith sought to purchase drugs from Albarado and Quinones, Albarado telephoned Herbierto Valdovinas for assistance in obtaining the cocaine. Valdovinas introduced Albarado to Falcon as someone who could supply the cocaine, and Falcon provided Albarado with a sample of cocaine so that he might test the quality. Albarado later telephoned Valdovinas and informed him that he needed the kilogram of cocaine for a drug transaction with Agent Smith later that afternoon. Valdovinas then contacted Falcon, who instructed Valdovinas to pick him up so they could go to Falcon's home to get the cocaine. Falcon and Valdovinas hid the cocaine in a secret compartment in a car provided by Falcon, and Valdovinas then drove Falcon in that car to a parking lot in Hammond, Indiana, where the deal was to take place. Agent Smith did not show, and Valdovinas drove them back to Chicago. After several failed attempts to consummate the transaction in this fashion, Falcon, Valdovinas, Albarado, and Quinones were arrested when they arrived in Hammond to complete the deal.

On July 18, 2001, Falcon and the others were indicted on counts of conspiracy to possess with intent to distribute 500 grams of cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). On February 21, 2002, the government obtained a superseding indictment that charged only Falcon with two counts of obstructing justice regarding the drug charges, by means of bribing a co-defendant, in violation of 18 U.S.C. § 1510. On March 29,

Falcon filed a motion for a bill of particulars,[1] seeking to learn more information about the factual and legal bases for the obstruction charges, and a motion to dismiss both obstruction counts. On April 18, Falcon filed a motion for an order compelling the government to provide the bill of particulars, which the court granted on April 23. In response, the government tendered to the court under seal grand jury transcripts relating to the superseding indictment. On April 30, the district court granted Falcon's motion to dismiss in part, dismissing one of the two obstruction charges.

On May 6, with trial only a week away, Falcon filed a motion in limine requesting that the government be prohibited from using expert witness testimony because it had failed to disclose the testimony as required by Federal Rule of Criminal Procedure 16. Falcon also filed a motion for sanctions against the prosecuting attorney for failing to comply with the court's order compelling a bill of particulars. On May 9, the court scheduled a May 10 hearing for Falcon's motion for sanctions. The government never filed a response to Falcon's motion for sanctions, but on May 9 it swore out before the magistrate judge a separate complaint against Falcon, charging him with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b). On the

---

[1] Federal Rule of Criminal Procedure 7(f) provides: "The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires." A request for a bill of particulars should be granted if the " 'indictment [fails to] set[] forth the elements of the offense charged and sufficiently apprise[] the defendant of the charges to enable him to prepare for trial.' " *United States v. Fassnacht*, 332 F.3d 440, 447 (7th Cir. 2003) (quoting *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981)).

morning of May 10, the district court denied Falcon's motion for sanctions in the drug case, but strongly admonished the prosecutor for not fully complying with the court's orders.[2] The complaint alleging illegal reentry was also filed with the court on May 10.

On May 13, Falcon was tried on the drug and obstruction charges. Valdovinas's trial testimony established that Falcon engaged Valdovinas to serve as a messenger for Falcon, and that Falcon instructed Valdovinas several times to accompany Falcon on trips to sell drugs. Testimony further established that Falcon provided a car with a secret compartment to transport the cocaine and that he was the supplier of the drugs being sold when he was arrested. On May 14, a jury convicted Falcon on the drug charges but acquitted him on the remaining obstruction of justice charge.

On May 16, the prosecutor in Falcon's drug trial obtained an indictment against Falcon on the separately filed illegal reentry charge. On June 6, Falcon filed a motion to dismiss the illegal reentry charge for vindictive prosecution, asserting that the charge was filed in retaliation for Falcon's May 6 motion for sanctions. The government responded to the motion to dismiss by asserting that it had brought the illegal reentry charge in order to punish Falcon fully for all of his illegal conduct in light of his purported attempt to bribe a co-defendant and obstruct justice. On July 3, the

---

[2] While Judge Moody was questioning the prosecutor about his lack of compliance with the court's orders, Judge Moody responded to the prosecutor's interruption by saying, "Obviously you know I'm pretty upset. I was upset yesterday. Really upset. If you didn't get the hint, you should by now." Sanctions Transcript at 11. In denying the motion for sanctions, Judge Moody admonished the prosecutor, "You know, timeframes that are set up by this Court either by myself or the Magistrate Judge are extremely important to this Court's effectively operating its business. In the future, Mr. Butler, meet them all. Understood?" *Id.* at 13.

district court denied Falcon's motion to dismiss the illegal reentry charge for vindictive prosecution without permitting discovery or conducting an evidentiary hearing on the issue. On July 8, Falcon pled guilty to the illegal reentry charge, but preserved his right to appeal the denial of his motion to dismiss.

On October 24, at sentencing for both cases, Falcon was sentenced to 151 months' imprisonment on the drug charges and an eight-month concurrent term for his illegal reentry conviction. Falcon appeals his sentence in the drug case and his conviction in the illegal reentry case. First, he claims that the district court erred in granting a two-level enhancement for his leadership role in the drug crimes. Second, he claims that the district court erred in denying his motion to dismiss for vindictive prosecution without first conducting an evidentiary hearing on the issue. We address these issues in turn.

## II. ANALYSIS

### A. Leadership Role Enhancement

Falcon argues the district court erred in enhancing his sentence for being an organizer, leader, manager, or supervisor of the drug conspiracy. We will reverse a district court's decision to enhance a sentence only if it was clearly erroneous. *United States v. Matthews*, 222 F.3d 305, 307 (7th Cir. 2000). The Sentencing Guidelines provide that a defendant's sentence may be enhanced two levels if he or she was an "organizer, leader, manager, or supervisor" of the criminal activity. U.S.S.G. § 3B1.1(c). Factors for the court to consider when making this determination include the defendant's (1) exercise of decision-making authority; (2) participation in committing the offense; (3) recruitment of accomplices; (4) degree of participation in planning or organizing the criminal activity; (5) degree of control or authority exercised over others involved in the criminal ac-

tivity; and (6) the nature and scope of the illegal activity. *Id.* § 3B1.1, cmt. 4; *United States v. Noble*, 246 F.3d 946, 953 (7th Cir. 2001).

Falcon argues that the enhancement was in error because he played no greater role in the enterprise than any of his co-defendants. Falcon primarily disputes testimony indicating that he directed Valdovinas's actions and that Valdovinas was not on equal footing with Falcon. Testimony by Valdovinas and Agent Smith, however, indicated that Valdovinas served as a messenger for Falcon, and that Falcon instructed Valdovinas to accompany Falcon on trips to sell drugs. That testimony also established that Falcon provided the cocaine to be sold illegally and provided a car with a secret compartment in which to hide the drugs. On the whole, the district court found the trial testimony sufficient to establish Falcon's role as an organizer of a criminal activity and these facts do not leave us with "the definite and firm conviction that a mistake has been committed." *United States v. Carrera*, 259 F.3d 818, 826 (7th Cir. 2001); *see Noble*, 246 F.3d at 954; *United States v. Sierra*, 188 F.3d 798, 803-04 (7th Cir. 1999); *United States v. Mustread*, 42 F.3d 1097, 1103-04 (7th Cir. 1994). Therefore, we affirm the district court's decision to enhance Falcon's drug sentence for his leadership role in the enterprise.

## B.  Vindictive Prosecution Hearing

Falcon argues that the district court should have granted a hearing on his claim of prosecutorial vindictiveness because the government brought the separate illegal reentry charge only after he filed motions to exclude the government's expert witness testimony and to sanction the prosecuting attorney. Falcon also contends the government failed to provide a sufficient explanation for the timing of the complaint. We review the district court's legal conclusions de novo and its findings of fact for clear error. *United*

*States v. Bullis*, 77 F.3d 1553, 1558 (7th Cir. 1996).

A vindictive prosecution claim arises when the government pursues prosecution in retaliation for the exercise of a protected statutory or constitutional right. *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996); *see also Bullis*, 77 F.3d at 1558 ("A prosecution is vindictive and a violation of due process if undertaken to punish a person because he has done what the law plainly allowed him to do.") (quotations omitted). To obtain the evidentiary hearing Falcon seeks, he must offer sufficient evidence to raise a reasonable doubt that the government acted properly in bringing the illegal reentry charge. *Monsoor*, 77 F.3d at 1034.

To raise a reasonable doubt as to the propriety of charges added before trial, a defendant "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *Bullis*, 77 F.3d at 1559. The affirmative showing is necessary because a prosecutor's pretrial decisions, including the choice to seek increased or additional charges, are presumed valid. *United States v. Spears*, 159 F.3d 1081, 1086 (7th Cir. 1998); *Bullis*, 77 F.3d at 1559; *see also United States v. Goodwin*, 457 U.S. 368, 384 (1982). Such pretrial decisions are presumed valid because "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Goodwin*, 457 U.S. at 382. Although there are limited circumstances where a defendant is entitled to a presumption of vindictiveness, those cases ordinarily arise after trial, following the defendant's exercise of his right to de novo review. *Id.* at 376-377; *see, e.g., Blackledge v. Perry*, 417 U.S. 21 (1974) (finding a presumption of prosecutorial vindictiveness where the prosecutor pursued enhanced charges after the defendant exercised his right to a trial de novo); *North*

*Carolina v. Pearce*, 395 U.S. 711 (1969) (finding a presumption of vindictiveness where a judge imposed a more severe sentence after a new trial).

When the government brings additional charges before trial, but after the defendant exercises a procedural right, evidence of suspicious timing alone does not indicate prosecutorial animus. *See Bullis*, 77 F.3d at 1559. As observed in *Goodwin*:

> [A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.

457 U.S. at 381. Only if a defendant can present evidence other than or in addition to timing will the burden shift to the government to come forward with proof that the motivation behind the charge was proper. *Bullis*, 77 F.3d at 1559.

Falcon's sole support for his vindictive prosecution claim is the allegedly suspicious timing of the illegal reentry complaint. The charge arrived on the heels of the following circumstances: (1) Falcon's motion in limine to exclude the government's expert witness testimony; (2) Falcon's motion for sanctions, which arose out of the government's failure to adequately respond to Falcon's request for a bill of particulars; and (3) the hearing on the motion for sanctions where the district court judge strongly admonished the prosecuting attorney for failing to abide by court-set deadlines. Based on this chain of events, Falcon posits that the prosecuting attorney filed the illegal reentry charge to

retaliate against Falcon for pursing his rights through pretrial motions. Here, the motion in limine and the motion for sanctions are procedural in nature. Without additional evidence that the prosecuting attorney harbored ill will against Falcon, the timing of the illegal reentry charge is not enough to shift the burden to the government or require a hearing.

The government responded to Falcon's vindictive prosecution claim by explaining that the illegal reentry charge was legitimate and pursued to fully punish Falcon for his aborted bribery attempt. Although the district court did not have to reach the government's reasons for filing the complaint since Falcon did not meet his evidentiary burden, it did not clearly err in crediting the government's explanation. It is undisputed that the charge had merit; the defendant had been previously deported twice. Further, Falcon offered no explanation other than timing for the government's action, failing to cast doubt on the government's justification.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decisions to enhance Falcon's drug sentence and to deny, without an evidentiary hearing, his motion to dismiss the illegal reentry indictment for vindictive prosecution.

WILLIAMS, *Circuit Judge,* dissenting.  I agree that Falcon's drug sentence was properly enhanced for his leadership role in the enterprise. I respectfully disagree, however, with my colleagues' conclusion that Falcon was not entitled to a vindictive prosecution hearing regarding the illegal re-

entry indictment.

Falcon has raised a "reasonable doubt that the government acted properly" in seeking the illegal reentry indictment sufficient to merit a hearing on his charge of vindictive prosecution. *See United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996) (citations omitted); *United States v. Heideke*, 900 F.2d 1155, 1158 (7th Cir. 1990).[1] The illegal reentry complaint was sworn to on May 9, only three days after Falcon filed a non-frivolous sanctions motion in his drug case against the same prosecuting attorney who then pursued the illegal reentry charge. I disagree with the majority's assertion that a sanctions motion is merely "procedural in nature." In this case, the motion personally accused the prosecuting attorney of failing to comply with a court order to provide Falcon with a bill of particulars on the obstruction charge, conduct for which the district court verbally reprimanded the prosecutor in the sanctions hearing. *See* majority opinion at note 2. The timing of the complaint seems even more suspicious given that it was filed on May 10, the day of the sanctions hearing, but not until five hours after the district court verbally reprimanded the prosecutor.

The government argues, as it did before the district court, that it filed the illegal reentry complaint because it had a factual basis for the indictment and because, having discovered that Falcon may have attempted to bribe a co-defendant in his drug case, it "determined Falcon was a serious criminal offender that should be held responsible for his past immigration violations as well." Not only does this argument fail to reconcile the suspicious timing that we outlined above, but on this record it also strains credibility.

---

[1] To obtain discovery into a vindictive prosecution allegation a defendant need only present a "colorable basis" for the claim. *Heideke*, 900 F.2d at 1159.

First, the government did not discover Falcon's prior illegally reentry and deportation history just before it filed the illegal reentry charge or just after Falcon filed his motion for sanctions. *See United States v. Napue*, 834 F.2d 1311, 1330 (1987) ("[T]he extent to which the government had obtained its evidence prior to the defendant's assertion of some right 'is one of the key indicia scrutinized by courts when confronted with a claim of vindictive prosecution.'") (citations omitted); *United States v. Dickerson*, 975 F.2d 1245, 1251 (7th Cir. 1992). Indeed, even if the government did not know about the factual basis for bringing the illegal reentry charge at the time it originally charged Falcon with his drug crimes, it knew about his deportation history at the time it filed the superseding indictment charging him with obstruction of justice.[2] Moreover, the government actually brought the obstruction of justice charge, and surely it could have at that time also added the illegal reentry charge to the superseding indictment,[3] especially when the facts underlying the obstruction charge were the government's sole basis for "later" concluding that Falcon was "a serious criminal offender that should be held responsible

---

[2]  The illegal reentry indictment was filed separate from, and ten months after, Falcon was initially charged in the drug case, and it was filed almost three months after the same prosecuting attorney obtained a superseding indictment in Falcon's drug case, charging him with obstruction of justice for alleged bribery of a co-defendant.

[3]  We have rejected claims of prosecutorial vindictiveness when a *superseding* indictment included a more severe charge, or resulted in a more severe sentence, following a change in circumstances, the exercise of a statutory right, or the discovery of new evidence. *See, e.g., United States v. O'Hara*, 301 F.3d 563, 571 (7th Cir. 2002); *Bullis*, 77 F.3d at 1559; *United States v. Yarbough*, 55 F.3d 280, 282-83 (7th Cir. 1995); *Schiselman v. United States Parole Comm'n*, 858 F.2d 1232, 1240 (7th Cir. 1988).

for his past immigration violations as well."

In finding this to be one of those rare occasions when this court should conclude that an evidentiary hearing into vindictive prosecution should have been provided, I do not conclude that prosecutorial animus or vindictiveness actually existed in this case, nor do I explicitly find any wrongdoing on the part of the prosecutor. I merely believe that the timing of the illegal reentry complaint, immediately following Falcon's sanctions motion that personally attacked the prosecutor, gives rise to reasonable doubt of prosecutorial vindictiveness sufficient to trigger a hearing into the indictment's propriety. *Monsoor*, 77 F.3d at 1034; *Heideke*, 900 F.2d at 1158 ("For a presumption of vindictiveness to arise, the facts of a case must implicate . . . a personal stake of the prosecutor; in other words, there must be a realistic likelihood of vindictiveness.") (citing *United States v. Goodwin*, 457 U.S. 368, 376 (1982)). I recognize the potential for abuse of prosecutorial vindictiveness allegations, and "we must guard against allowing claims of vindictive prosecution to mask abusive discovery tactics by defendants." *Heidecke*, 900 F.2d at 1159. Yet, when considering that "the defense[] of . . . vindictive prosecution require[s] the defendant to probe the mental state of the prosecutors," I feel such a risk is justified in this situation. *Id.*; *cf. Dickerson*, 975 F.2d at 1251. The district court might reasonably conclude there was a "realistic likelihood of vindictiveness" in this case, *Goodwin*, 457 U.S. at 376, and under such circumstances an evidentiary hearing should have occurred to avoid "prematurely stif[ling] a legitimate defense of vindictive prosecution for lack of evidence." *Heidecke*, 900 F.2d at 1159.

For the foregoing reasons, I respectfully dissent from the majority's conclusion that Falcon was not entitled to a vindictive prosecution hearing.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***