In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2691

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EUGENE JOHNSON, also known as GENO,

Defendant-Appellant.


Appeal from the United States District Court
for the Central District of Illinois.
No. 98 CR 30091--Jeanne E. Scott, Judge.


Argued April 14, 2000--Decided September 13, 2000


Before POSNER, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.  Eugene Johnson was indicted for selling 1.1 grams of cocaine base ("crack") to a Government informant. Before the district court, he entered a plea of guilty to the charge of knowingly and intentionally distributing a controlled substance, in violation of 21 U.S.C. sec.841(a)(1). At his sentencing hearing, the court found that Mr. Johnson had engaged in other relevant conduct by selling 56.7 grams of crack and 28.35 grams of cocaine. See U.S.S.G. sec.1B1.3. The court added these amounts to the 1.1 grams of crack that Mr. Johnson had sold to the informant during the charged offense and then calculated his base offense level as 32.

The court then enhanced Mr. Johnson's sentence two levels for possessing a firearm during his other relevant conduct. See U.S.S.G. sec.2D1.1. Finding that Mr. Johnson had threatened the informant in order to prevent him from testifying, the court also enhanced Mr. Johnson's sentence two levels for obstructing justice, see U.S.S.G. sec.3C1.1, and denied his request for a downward departure for accepting responsibility, see U.S.S.G. sec.3E1.1. The court further denied Mr. Johnson's request for a discretionary downward departure based on his family responsibilities.

Then, the court sentenced him to 276 months imprisonment and 6 years supervised release. Mr. Johnson now challenges all aspects of his sentence on appeal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I
BACKGROUND
A.  Facts

For over a year, Earl Nelson sold crack that he previously had purchased from Mr. Johnson and Mr. Johnson's co-defendant, Chris Harris. With several charges pending against him, however, Nelson agreed to cooperate with authorities and to purchase crack from various drug dealers, including Mr. Johnson and Harris. For Nelson's controlled purchase from Mr. Johnson, the authorities outfitted Nelson with a recording device and then monitored his actions while he purchased 1.1 grams of crack from Mr. Johnson. Based on this transaction, a grand jury returned an indictment against Mr. Johnson for knowingly and intentionally distributing crack in violation of 21 U.S.C. sec.841(a)(1)./1

Mr. Johnson entered an open plea of guilty before the district court. At his plea hearing, Mr. Johnson requested a downward departure in his sentence for acceptance of responsibility. The Government clarified that, although it probably would not object to Mr. Johnson's request, there was no firm agreement between the parties on the matter and that the Government had no obligation to move for such a departure./2

After this plea hearing and while awaiting sentencing, Mr. Johnson was imprisoned, along with Nelson and Harris, at the Sangamon County Jail in Springfield, Illinois. During this time, the Government received a report from Nelson in which he stated that, because he was planning to testify on behalf of the Government, Mr. Johnson had threatened his life. According to Nelson, he was entering the jail's gym while Mr. Johnson was leaving. While they were passing each other, Mr. Johnson accused Nelson of setting him up. Mr. Johnson then pointed his finger at Nelson, as if his finger were a "gun," and said "pow." Sent. Tr. at 60. Mr. Johnson also told Nelson, "when you hit the streets, you dead." Id. At the same time, Nelson could see Harris walking down the hall toward them. As soon as Nelson was released from jail, he reported these threats to an agent of the Drug Enforcement Agency ("D.E.A."). In response to the threats, the D.E.A. helped Nelson move from the state of Illinois. The D.E.A. and Nelson also began preparations for Nelson's family to join him in his new locale.

Based on Mr. Johnson's conduct toward Nelson, the Government recommended that his sentence be enhanced for obstructing justice and that his request for a downward departure for accepting responsibility be denied.

B.   The Sentencing Hearing

At Mr. Johnson's sentencing hearing, the court determined that Mr. Johnson had engaged in the "other relevant conduct"/3 of selling crack and cocaine with Harris. According to testimony at the sentencing hearing, Mr. Johnson was Harris' "right hand man," and everywhere Harris went, Mr. Johnson went. Sent. Tr. at 49. Together they had sold or fronted crack and cocaine in large quantities to several other dealers, who in turn had sold the drugs for individual use. The court consequently found that Harris and Mr. Johnson had been involved in an ongoing course of conduct involving the sale of crack and cocaine for the one and one-half years prior to Mr. Johnson's arrest.

From that course of conduct, the court found that Mr. Johnson was accountable for 56.7 grams of crack and 28.35 grams of cocaine. The court based its crack calculation on the testimony of Walter Kling. Kling testified extensively at the sentencing hearing about his own involvement in selling crack and cocaine with Harris and Mr. Johnson. He also testified that, on one occasion, he had brought a scale to Harris and watched as Harris weighed crack on it. Then, Harris had fronted 2 ounces (56.7 grams) of the crack to Mr. Johnson and then 2 ounces to Kling. The court attributed to Mr. Johnson the 56.7 grams of crack that Harris had fronted to him. Next, the court calculated the quantity of cocaine attributable to Mr. Johnson by using information provided by Jerry Smith. Smith, who had been arrested with 28.35 grams of cocaine in his possession, reported to the D.E.A. that he had paid Harris for the cocaine, which Mr. Johnson then had handed to him. The court attributed to Mr. Johnson this 28.35 grams of cocaine. The court then added these two amounts to the 1.1 grams of crack for which Mr. Johnson was arrested. From the aggregation of these amounts, the court calculated Mr. Johnson's base offense level as 32.

The court next found that Mr. Johnson had possessed a firearm during his other relevant conduct. Although no evidence indicated that Mr. Johnson had possessed a firearm when he sold Nelson the 1.1 grams of crack, the offense for which he later was convicted, the court found that Mr. Johnson had possessed a firearm during his course of conduct of selling crack and

cocaine. Specifically, the court credited the testimony of Nelson that, on one occasion, Mr. Johnson had possessed a .45-caliber firearm while he was selling crack to Nelson. The court stated, moreover, that Mr. Johnson had been seen in the possession of a firearm at a birthday party for Harris. At this same time, Harris had a substantial amount of money on him and was not gainfully employed. In the absence of evidence refuting these facts, the court found that there was "a likely connection to the gun and the other relevant conduct," namely, the sale of crack and cocaine. Sent. Tr. at 138. Thus, under sec.2D1.1 of the Sentencing Guidelines, the court enhanced Mr. Johnson's sentence two levels for possession of a firearm.

At the sentencing hearing, Nelson also testified about Mr. Johnson's threat against him. Prison officials testified that it was improbable that Mr. Johnson and Nelson would encounter each other while Harris was in sight, but they also stated that it was not impossible. The officials also noted that the gym time for Mr. Johnson's cell block immediately preceded the gym time for Nelson's cell block./4 Thus, concluded the court, Mr. Johnson could have been leaving the gym as Nelson was entering and the testimony of the officials on this point lent credibility to Nelson's testimony about the incident. Furthermore, the court noted other factors indicating that Nelson's testimony was credible, including that Nelson had reported the incident to the D.E.A. immediately after his release from jail, that he had moved to a different state, and that he also was planning to relocate his family. Finding that Nelson was credible, the court found that Mr. Johnson had threatened Nelson in order to prevent Nelson from testifying against him. On the basis of this evidence, the court held that, because Mr. Johnson had threatened a witness against him, he had obstructed justice and that his sentence accordingly should be increased two levels pursuant to sec.3C1.1 in the Sentencing Guidelines. Moreover, because Mr. Johnson had threatened Nelson, the court also found that he had not accepted responsibility and, thus, denied his request for a downward departure.

Finally, the district court refused to depart downward for Mr. Johnson's family circumstances-- he has two young children to support--because Mr. Johnson had not shown that his family circumstances were out of the ordinary./5
The court determined that Mr. Johnson had an offense level of 36 and a Criminal History Category of III, which produced a sentencing range of 235 to 293 months. Then, the court sentenced Mr. Johnson to 276 months imprisonment and 6 years supervised release.

II
DISCUSSION
A.  Standard of Review

   When reviewing a district court's sentencing determination, we look at the court's interpretation of the Sentencing Guidelines de novo. See United States v. Ewing, 129 F.3d 430, 434 (7th Cir. 1997). However, "we review the findings of fact underlying the application of the sentencing guidelines for clear error." United States v. McEntire, 153 F.3d 424, 431 (7th Cir. 1998); Ewing, 129 F.3d at 434. A finding of fact is clearly erroneous only when, on the entire evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); see also McEntire, 153 F.3d at 431. During sentencing, the Government must prove the facts underlying the base offense or an enhancement by a preponderance of the evidence. See United States v. Smith, 210 F.3d 760, 762 (7th Cir. 2000). Furthermore, because the Federal Rules of Evidence do not apply, the district court may hear evidence that would not otherwise be admissible, such as hearsay. See McEntire, 153 F.3d at 435; United States v. House, 110 F.3d 1281, 1285-86 (7th Cir. 1997).
B.  Other Relevant Conduct
1.

   The district court's calculation of the quantity of drugs attributable to Mr. Johnson during both the offense of his conviction and any other relevant conduct is reviewed only for clear error. See United States v. Robinson, 164 F.3d 1068, 1070 (7th Cir.), cert. denied, 120 S. Ct. 122 (1999); United States v. Beler, 20 F.3d 1428, 1431 (7th Cir. 1994). In determining a defendant's base offense level, the district court must consider quantities of drugs that were not specified in the count of conviction but that were part of the "same course of conduct" or "common scheme or plan" as the offense of conviction. U.S.S.G. sec.1B1.3(a)(2); McEntire, 153 F.3d at 434; Beler, 20 F.3d at 1431. The Commentary to the Sentencing Guidelines explains that offenses are part of the same course of conduct if they are "part of a single episode, spree, or ongoing series of offenses." U.S.S.G. sec.1B1.3, comment. (n.9). To make this determination, the sentencing court should focus "on whether the government has demonstrated a significant 'similarity, regularity, and temporal proximity'" between the uncharged conduct and the convicted offense. United States v. Bacallao, 149 F.3d 717, 719 (7th Cir. 1998) (citations omitted)./6 "[T]he information underlying the

court's approximation must possess sufficient indicia of reliability," and "[u]nreliable allegations must not be considered." Beler, 20 F.3d at 1433 (citations omitted); see also Robinson, 164 F.3d 1070; McEntire, 153 F.3d at 431.

Mr. Johnson argues that the evidence of his "other relevant conduct" was not sufficiently reliable. He points to discrepancies in the testimony of the witnesses and to the fact that the witnesses were drug-using felons who were receiving reductions in their own sentences for testifying against Mr. Johnson. The district court heard these facts and the witnesses' testimony and found the testimony to be credible. A sentencing court's credibility determinations are accorded exceptional deference. See United States v. McClinton, 135 F.3d 1178, 1193 (7th Cir.), cert. denied, 524 U.S. 921 and 525 U.S. 885 (1998). "As this court has held countless times, sentencing judges are fully capable of considering the motivations of witnesses in weighing conflicting evidence and, because they have had an opportunity to assess the demeanor of the witnesses, are in a better position than this court to make credibility determinations." House, 110 F.3d at 1285-86. Moreover, we have held that "a district court is entitled to credit testimony that 'is totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug-dealing, paid government informant.'" McEntire, 153 F.3d at 436 (quoting United States v. Garcia, 66 F.3d 851, 857 (7th Cir. 1995)).

Here, the district court detailed how it determined the amount of drugs attributable to Mr. Johnson for his other relevant conduct. The court's findings were based on witnesses' testimony that it found credible; no facts directly contradicted the witnesses' testimony, and aspects of the testimony were corroborated by other sources. Therefore, the evidence underlying the witnesses' testimony had a sufficient indicia of reliability, and the district court's drug quantity calculation must be upheld.

2.

The district court enhanced Mr. Johnson's sentence for possession of a firearm in connection with his drug trafficking activities pursuant to sec.2D1.1 of the Sentencing Guidelines. At the sentencing hearing, Nelson testified that he had seen Mr. Johnson with a .45-caliber firearm on two separate occasions. On one occasion, Mr. Johnson was with Harris, who was in possession of a large quantity of cash, and, on the other occasion, Nelson was purchasing drugs from Mr. Johnson. Based on this evidence,

the court found that Mr. Johnson had possessed the firearm during his related course of conduct of selling crack and cocaine.

The applicable guideline section states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. sec.2D1.1. "Although it is the government's initial burden to prove by a preponderance of the evidence 'that the defendant possessed a weapon in a place where drugs were present,' the burden of persuasion then falls upon the defendant to demonstrate that it is 'clearly improbable' that the weapon was connected with [his] drug trafficking." United States v. Tyler, 125 F.3d 1119, 1122 (7th Cir. 1997) (quoting United States v. Booker, 115 F.3d 442, 443 (7th Cir. 1997) (per curiam)); see also McClinton, 135 F.3d at 1193. The district court's characterization of the relationship between a weapon and a defendant's underlying offense is a factual assessment that is reviewed only for clear error. See United States v. Cain, 155 F.3d 840, 843 (7th Cir. 1998); McClinton, 135 F.3d at 1193; Tyler, 125 F.3d at 1122.

The firearm possession here did not occur during the transaction for which Mr. Johnson was convicted; however, we have stated previously that the enhancement may be applied if the sentencing court finds that the defendant possessed the firearm during the offense that led to the conviction or during relevant conduct. See United States v. Berkey, 161 F.3d 1099, 1102 (7th Cir. 1998); Cain, 155 F.3d at 843. "[A]n enhancement under sec.2D1.1(b)(1) is appropriate for simple, and entirely passive, possession" of a firearm. Booker, 115 F.3d at 443. "For purposes of a weapons enhancement, the government need not show that the defendant used the firearm during the commission of a drug sale, but only that he possessed the firearm during the offense that led to the conviction, or during relevant conduct, as defined by U.S.S.G. sec.1B1.3." Berkey, 161 F.3d at 1102. The proximity of a weapon to drug proceeds provides a sufficient nexus to conclude that "it was not clearly improbable that the gun was connected with the offense." McClinton, 135 F.3d at 1193.

The district court found that Mr. Johnson possessed the firearm on two occasions: (1) when he was in the company of Harris, who was in possession of a large amount of cash and (2) during the sale of crack to Nelson. Mr. Johnson offered no evidence to show that it was clearly improbable that the firearm was used in connection with his drug sales. See Berkey, 161 F.3d at 1103. The Government's evidence, therefore, is sufficient to support a finding

that Mr. Johnson possessed the firearm during his other relevant conduct of selling crack and cocaine. Because the court found that Mr. Johnson possessed the firearm during his relevant conduct of selling crack cocaine and cocaine, it properly enhanced his sentence for possession of a firearm.

## C.  Obstruction of Justice

Because the district court found that Mr. Johnson had threatened Nelson, we must uphold this finding unless we are left with the firm belief that an error has been made. See Ewing, 129 F.3d at 433-34. We conclude that a rational trier of fact could find that Nelson was a credible witness. The testimony of the prison officials corroborated, in part, Nelson's testimony; the officials reported on the prisoners' housing patterns and activities and explained that it was not impossible for all three men to pass. Also, Nelson and a D.E.A. agent testified that, as soon as Nelson left the jail, he reported the threats to the D.E.A. and then moved out of the state. Based on this evidence, a rational fact finder could find that Nelson was a credible witness and could credit Nelson's statement that Mr. Johnson threatened him.

Section 3C1.1 of the Sentencing Guidelines provides that a defendant's sentence may be increased for obstructing justice. The section states as follows:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. sec.3C1.1. The Commentary to this section explains that a defendant may obstruct justice by "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. sec.3C1.1, comment. (n.4(a)). Thus, because the district court found that Mr. Johnson had threatened Nelson, its finding that Mr. Johnson obstructed justice is not clearly erroneous. Based on its findings, the district court properly enhanced Mr. Johnson's sentence for obstruction of justice.

## D.  Acceptance of Responsibility

Because the district court found that Mr. Johnson had threatened Nelson, it also found that he did not accept responsibility. "The district court's acceptance of responsibility determination is a factual finding which we review for clear error." United States v. Fiore, 178 F.3d 917, 925 (7th Cir. 1999). A defendant may be entitled to a reduction in his sentence if he accepts responsibility for his actions./7 See Ewing, 129 F.3d at 435. By threatening Nelson, however, Mr. Johnson is not entitled to such a reduction in his sentence. As the Commentary to U.S.S.G. sec.3E1.1 explains:

4. Conduct resulting in an enhancement under sec.3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both sec.sec.3C1.1 and 3E1.1 may apply.

5. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

U.S.S.G. sec.3E1.1, comment. (nn.4 & 5) (emphasis added). Therefore, once a court finds that the defendant obstructed justice, absent extraordinary circumstances, the defendant should be denied a reduction for accepting responsibility. See Ewing, 129 F.3d at 435.

Mr. Johnson has not shown that extraordinary circumstances exist here. Indeed, the situation before us presents a particularly appropriate one in which to enhance a sentence for obstructing justice and to deny a downward departure for accepting responsibility. Mr. Johnson claims that he demonstrated acceptance of responsibility by pleading guilty. Yet, after entering that plea and awaiting sentence, he threatened the witness against him. Mr. Johnson's threat of Nelson belied any sense of remorse that should be attendant to an acceptance of responsibility. Mr. Johnson clearly did not accept responsibility for his actions, and, therefore, the district court properly denied his request for a downward departure.

E.  Downward Departure for Family Responsibilities

Finally, Mr. Johnson seeks review of the district court's refusal to grant a downward departure due to his family responsibilities. Mr.

Johnson has two dependents that he claims to support financially. The court explained that courts usually depart only "where the record supports a finding of significant or unusual family responsibilities." Sent. Tr. at 142. The court considered Mr. Johnson's request but stated that Mr. Johnson had not shown that his situation was anything but typical. Thus, the court refused Mr. Johnson's request for a downward departure.

"The decision of a district court to deny a downward departure is a discretionary decision not subject to the review of this court." United States v. Saunders, 129 F.3d 925, 933 (7th Cir. 1997); see also United States v. Mattison, 153 F.3d 406, 413 (7th Cir. 1998); United States v. Tyler, 125 F.3d 1119, 1123 (7th Cir. 1997). We lack jurisdiction to review the district court's decision unless the sentence is imposed in violation of the law or as a result of an incorrect application of the Sentencing Guidelines. See United States v. Guy, 174 F.3d 859, 861 (7th Cir. 1999); United States v. Yoon, 128 F.3d 515, 529 (7th Cir. 1997).

According to sec.5H1.6 of the Sentencing Guidelines, "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining" the defendant's sentence. We have held, however, that unusual and extraordinary family circumstances may justify a downward departure, although this departure is not the norm. See Guy, 174 F.3d at 860. Here, the court understood it had the power to grant a downward departure for family responsibilities, but specifically addressed the request and refused to grant it. Because that decision was within the court's discretion, and not in violation of the law or an incorrect application of the Sentencing Guidelines, we cannot review it.

Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

/1 The relevant statutory provision states as follows:
(a) Unlawful acts
Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute,

or dispense, a controlled substance[.]
21 U.S.C. sec.841.

/2 In order to clarify the Government's position, the district court asked Mr. Johnson's counsel whether a plea agreement existed. The following exchange then took place:

  MR. REID (Counsel for Mr. Johnson):  Well, there is no written agreement, Your Honor. And I would say there's no agreement, other than we--

  THE COURT:  You're request is a three Offense Level reduction, but has the Government agreed to that, for example?

  MR. BASS (Counsel for the Government):  Your Honor, I will say I have indicated to Mr. Reid that as we stand here today, if the Defendant pleads guilty, then as we sit here today it would be my view that he has accepted responsibility and has done so in a timely manner. But having said that, there's no specific agreement between the Government and the Defense.

  And as I indicated to Mr. Reid, in all likelihood, if circumstances don't change, I'm not going to have any objection to that acceptance. But there's still issues to be addressed that could have a bearing on that acceptance.

  THE COURT:  So you're not binding yourself at this time?

  MR. BASS:  Exactly.
  THE COURT:  Is that understood, Mr. Reid?

  MR. REID:  That's understood, judge.

R.17 at 4-5.

/3 See U.S.S.G. sec.1B1.3.

/4 Moreover, the prison officials stated that a guard might not observe one inmate verbally threatening another, due to the guard's responsibility to watch several inmates at once, and that, even if the guard did observe the threat, he might not report the incident because, "it's not uncommon for inmates to threaten other inmates" or prison guards. Sent. Tr. at 100.

/5 Mr. Johnson has two young children with his girlfriend of five years. He also claims to support a child his girlfriend had from a previous relationship.

/6 A finding that a defendant engaged in "other relevant conduct" allows the court to consider

quantities of drugs not addressed in the count of conviction as long as "'the unconvicted activities bore the necessary relation to the convicted offense.'" Bacallao, 149 F.3d at 719 (quoting United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir. 1991)).

/7 sec.3E1.1.  Acceptance of Responsibility

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection

(a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S.S.G. sec.3E1.1.