**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Angel H. BEASLEY, Defendant–
Appellant.**

**United States of America,
Plaintiff–Appellee,**

v.

**Cynthia Everage, Defendant–Appellant.**

No. 99–3980, 00–1434.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 2000.

Decided Jan. 18, 2001.

Before CUDAHY, COFFEY, ROVNER, Circuit Judges.

## ORDER

Cynthia Everage pled guilty to two counts of distributing crack cocaine, *see* 21 U.S.C. § 841(a)(1), in connection with two sales to an undercover agent in March 1999. The district court sentenced her to 210 months of imprisonment followed by four years of supervised release, a $500 fine and $200 special assessment. Everage filed a timely notice of appeal, but her appointed attorney has moved to withdraw because she is unable to discern a non-frivolous issue for appeal. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Everage was notified of her attorney's motion pursuant to Circuit Rule 51(b) and has filed a response. After reviewing the potential grounds for appeal discussed in counsel's facially-adequate *Anders* brief, *see United States v. Wagner,* 103 F.3d 551, 553 (7th Cir.1996), and Everage's response, we conclude that the proposed issues are indeed frivolous. Therefore, we grant counsel's motion to withdraw and dismiss the appeal.

Co-defendant Angel H. Beasley pled guilty to one count of distributing crack cocaine in connection with the second March 1999 undercover transaction, and was sentenced to 168 months' imprisonment followed by four years of supervised release, a $1000 fine and $100 special assessment. Beasley appeals on the ground that the district court erroneously relied on Everage's allegedly inconsistent hearsay statements to calculate her drug quantity. Because the district court based its drug-quantity calculation on sufficiently reliable information, we affirm.

## I. Background

On March 16, 1999, Cynthia Everage sold 12.8 grams of crack cocaine to an undercover DEA agent at Charlie's Bar and Tavern in Alton, Illinois, in exchange for $550. The agent later telephoned Everage and discussed buying another one-half ounce of crack. Everage told the agent that she needed to contact her supplier. On March 25, the agent met with Everage, and the two drove to a house in Alton. Once there, Everage got out of the car and met with Angel Beasley on the porch. After Beasley handed her a package, Everage got back into the agent's car and sold him 12 grams of crack for $535. Everage then returned to the porch and handed the money to Beasley.

## II. Discussion

### A. *Cynthia Everage*

Everage entered open guilty pleas to separate counts arising from the two March 1999 undercover buys. In the presentence investigation report, the probation officer noted that a confidential informant had purchased powder cocaine from Everage in November 1998 and crack cocaine in December 1998. The probation officer also recounted Everage's confession to an Alton detective after a February 1999 probation violation arrest that from March 1998 to January 1999 she sold crack for Sammy Lee Parker, Jr., usually through Parker's live-in girlfriend, Beasley. Everage told the detective that Parker fronted her one-quarter ounce of crack four times a day for almost nine months. In August 1999, Everage gave a proffer to case agents in which she stated that the total amount of crack she received from Beasley was about one kilogram. Based on Everage's admission to the Alton detective, the probation officer calculated the crack cocaine attributable to Everage to be 6.35 kilograms. That drug quantity coupled with Everage's eight prior convictions yielded a guideline range of 210–262 months.

Everage objected that the drug quantity calculation failed to take into account that

she had consumed much of the crack herself. Everage also objected to the inclusion of information about a 1993 battery conviction she allegedly could not recall, though she conceded that the conviction did not in any event affect her criminal history category. In response to her objections, the probation officer reaffirmed the quantity calculation and produced documents evidencing the battery conviction. At sentencing, with Everage's consent, counsel withdrew the two objections. The district court then adopted the recommendations in the PSR and imposed a 210–month prison term.

■ In her *Anders* brief, counsel first considers whether a challenge to the drug quantity might prevail and correctly concludes that it would not. The drug quantity for purposes of U.S.S.G. § 2D1.1 is to include amounts beyond the counts of conviction if part of the "same course of conduct" or "common scheme or plan." *United States v. Johnson,* 227 F.3d 807, 813 (7th Cir.2000). The district court's quantity calculation is a factual determination ordinarily subject to review for clear error, *id.,* but in this instance, Everage waived appellate review by affirmatively withdrawing her objection to the PSR. Unlike forfeiture, where failure to timely assert a right results in review only for plain error, waiver occurs in the event of intentional relinquishment of a right, precluding *any* review. *See United States v. Scanga,* 225 F.3d 780, 783 (7th Cir.2000) (defendant intentionally relinquished right to appeal when he affirmatively stated he had no further objections to drug quantity calculation); *United States v. Redding,* 104 F.3d 96, 99 (7th Cir.1996) (defendant waived review of criminal history calculation where he raised objection at pre-sentence hearing but at sentencing he affirmatively accepted calculation).

■ In any event, even if we were able to review the drug quantity calculation, any challenge to the reliability of the information on which the district court based its conclusion would be frivolous. The district court relied on Everage's own statement that Parker fronted her an ounce of crack cocaine a day for almost nine months, and conservatively estimated the total to be 6.35 kilograms. *See United States v. Jackson,* 121 F.3d 316, 321 (7th Cir.1997) (no error where district court used defendant's own statement to come up with drug quantity attributable to defendant). Although the PSR alludes to Everage's crack addiction, she offered no evidence about the amounts she was consuming or, more importantly, how much of the crack from Parker she allegedly consumed. And because Everage's base offense level of 38 would have remained the same for any amount of crack over 1.5 grams, *see* U.S.S.G. § 2D1.1(c)(1), her personal use to be relevant must have exceeded 4.85 kilograms (or 76% of what Parker fronted). Any argument that the little information in the PSR about Everage's personal use would support such an inference would be frivolous.

■ Counsel next identifies the criminal history calculation as a potential avenue of appeal and again asserts that any challenge is frivolous because Everage waived review of this issue when she withdrew her objection to inclusion of the battery conviction in her criminal history score. In any event, raising the point would be futile, as court records proved that Everage pleaded guilty to the charge and received two months' supervision. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(a)(3). Moreover, even if the battery conviction was included in error, the resulting criminal history point under U.S.S.G. § 4A1.1(c) could not have affected Everage's overall criminal history score because the battery was one of eight

convictions that yielded a point under § 4A1.1(c), and only the first four count. *See* U.S.S.G. § 4A1.1(c); *id.*, comment (n.3). Thus, counsel correctly asserts that any challenge to the criminal history calculation would be frivolous.

In her response to counsel's *Anders* brief, Everage appears to argue that a proposed plea agreement fell through, and that the information she provided in connection with the proposed agreement was used against her. According to Everage, the government breached the "agreement" not to use this information, and her attorney was ineffective for not warning her about the potential use the government could make of her proffer if she pleaded guilty. Everage also contends that counsel was ineffective for failing to object to the inclusion of uncounseled misdemeanors in her criminal history score, and for failing to present evidence at sentencing that she was a drug addict. Finally, she asserts that counsel should have argued for a minor-participant reduction under U.S.S.G. § 3B1.2.

■ First, we have observed that, where the record is not sufficiently developed to pursue a claim of ineffective assistance of counsel, a collateral proceeding is the more appropriate venue for such a claim. *See United States v. Garrett*, 90 F.3d 210, 214–15 (7th Cir.1996). In this case, the arguments in Everage's Rule 51(b) response require extra-record development, and thus we need not address them. In any event, as to the alleged "plea agreement," Everage did indeed proffer to case agents in August 1999 that she received a total of one kilogram of crack cocaine from Beasley, and this information was contained in the PSR. However, no violation occurred in this case because the probation officer calculated the drug quantity based on Everage's February 1999 confession to the Alton detective, not on the basis of her post-arrest proffer. To the extent Everage may have repeated information from her February 1999 confession in her proffer, she was not protected because the government already knew about it. *See* U.S.S.G. § 1B1.8(b)(1).

■ Further, to the extent that Everage argues that her counsel's advice (or lack thereof) rendered her pleas involuntary, her statements during the plea colloquy belie such a contention. The record in this case shows that the district court advised Everage of the nature of the charge, the maximum possible penalties, and the various rights she would waive by pleading guilty, and Everage confirmed in each instance that she understood. *See United States v. Godwin*, 202 F.3d 969, 972 (7th Cir.), *cert. denied*, 529 U.S. 1138, 120 S.Ct. 2023, 146 L.Ed.2d 970 (2000). The court also informed Everage that it would determine the sentencing guideline range after reviewing the PSR and hearing arguments from the government and defense counsel. Statements made in the plea colloquy are presumed truthful. *See United States v. Standiford*, 148 F.3d 864, 868–69 (7th Cir. 1998).

■ As to counsel's failure to challenge the district court's criminal history assessment and relevant conduct calculation, we have held that an uncounseled misdemeanor conviction for which a defendant did not receive a term of imprisonment may be relied on to enhance a sentence. *United States v. Katalinich*, 113 F.3d 1475, 1481 (7th Cir.1997) (citing *Nichols v. United States*, 511 U.S. 738, 746–47, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994)). And even if the uncounseled convictions were not considered, Everage would have still accumulated the requisite four criminal history points under U.S.S.G. § 4A1.1(c) with the prior convictions in which she did receive the benefit of counsel. Finally, Everage's claim as to coun-

sel's failure to argue her role as a minor participant is meritless because the facts do not suggest that Everage was merely a minor player in a larger conspiracy; to the contrary, she pled guilty to twice selling crack cocaine to an undercover agent and admitted to receiving over six kilograms of crack from Parker to distribute herself. In this context, Everage was not a minor participant in either the undercover transactions or a larger conspiracy.

## B. *Angel H. Beasley*

Angel Beasley pled guilty to one count of distributing crack cocaine in connection with Everage's March 25, 1999 sale of 12 grams of crack to the undercover agent. In calculating the quantity of drugs attributable to Beasley, the probation officer relied on Everage's August 1999 proffer in which she told federal authorities that her multiple crack purchases from Beasley totaled about one kilogram. Relying on Everage's proffer, the probation officer recommended a drug quantity of at least 500 grams but less than 1.5 kilograms of crack, resulting in a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2). After factoring in a three-level reduction for acceptance of responsibility and a criminal history category of III, the probation officer calculated a guideline imprisonment range of 168–210 months.

Beasley objected to the PSR's reliance on Everage's proffer, so at sentencing the government called Alton detective Adams and DEA agent Watson to testify. According to Adams, Beasley was in custody for an unrelated traffic violation in June 1998 when she first told another detective that Parker was a large-scale cocaine trafficker and that at times she sold drugs for him. Additionally, Adams testified that in January 1999, a confidential informant purchased .7 grams of crack cocaine from Beasley at the residence she shared with

Parker. A search warrant executed the next day yielded another 7.2 grams of crack from Parker and Beasley's bedroom. At the time, Adams explained, Beasley had a small bag of cocaine in her pants, as well as $250 that she claimed she received from Cynthia Everage the day before. After the search, Beasley told Adams that Parker was a large-scale drug dealer and that she sold drugs for him.

Adams further related that, after Everage was arrested on a probation violation warrant in February 1999, she admitted to him that for almost nine months, beginning in May 1998, she had obtained one ounce of crack cocaine a day from Parker, either directly or through Beasley, for a total of about six kilograms. According to Adams, Everage explained that Beasley was distributing the drugs to insulate Parker from authorities. Additionally, she mentioned also getting her drugs from "Hector" (who was discovered during the January 1999 search of the Alton residence with 20 grams of crack in his pants) and "Jersey," both of whom likewise worked for Parker. Everage also told the detective that Kimberly Brown stored crack for Parker; Adams testified that Brown independently confessed to selling drugs for Parker beginning in August 1997 and told him that Beasley twice delivered the crack to her.

Agent Watson testified that in June 1999, several months after the undercover buys, he elicited Everage's confession that she began purchasing crack from Parker in May 1998 and, shortly thereafter, was instructed to obtain the crack from Beasley. Watson stated that Everage said she bought about $100 of crack a day from Beasley from May 1998 until her second sale to Watson in March 1999. The agent estimated that $100 worth of crack cocaine was the equivalent of 1.75 grams, and concluded that Everage had received a total of

about 493.5 grams of crack from Beasley. Agent Watson further testified that, in an August 1999 proffer conducted after Everage was indicted on federal drug charges, she told him that her multiple purchases of crack from Beasley amounted to about "one kilogram."

After Agent Watson's testimony, Beasley attempted to call Everage, but she refused and asserted her Fifth Amendment privilege against self-incrimination. Beasley then called her uncle, who testified that Beasley was living with her mother in Kennett, Missouri, from November 1, 1998 until December 24, 1998, therefore leading to the conclusion that Everage could not have purchased drugs from Beasley during this period.

The district court arrived at a crack quantity of 557.85 grams. The court reached this amount by crediting Agent Watson's testimony that Everage told him she obtained $100 of crack cocaine (estimated to be 1.75 grams) from Beasley every day during the 329–day span from May 1, 1998 to March 25, 1999. But the court also credited the testimony of Beasley's uncle that Beasley was in Missouri for 54 of those days, and subtracted that number for a total of 275 days. At 1.75 grams per day, the court reached an initial amount of 481.25 grams. To that the district court added the 12 grams from the second March 1999 undercover buy, the .7 grams Beasley sold in January 1999 to a confidential informant, and the 7.2 grams found in Beasley's bedroom the next day. The district court also credited Sergeant Adams's testimony that Brown told him she purchased two ounces of crack from Beasley (56.7 grams), thus increasing the total attributable to Beasley to be 557.85 grams.

■ On appeal, Beasley argues that the district court's drug quantity calculation was based on unreliable information because Everage's statements about the amounts she received from Beasley were hearsay and, in Beasley's opinion, inconsistent. As stated above, drug quantity findings are reviewed only for clear error. *Johnson*, 227 F.3d at 813. The district court's conclusion in this case was not clearly erroneous, as the information provided by Everage bore sufficient indicia of reliability. The government need only prove relevant conduct by a preponderance of the evidence. *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir.2000). Furthermore, hearsay evidence may be used at sentencing. U.S.S.G. § 6A1.3; see *United States v. Szakacs*, 212 F.3d 344, 352 (7th Cir.2000). That Beasley was regularly delivering drugs from Parker to Everage was corroborated in several respects. Beasley pleaded guilty to distributing crack by giving the drugs to Everage, who in turn sold them to an undercover agent. According to the portions of the PSR that the district court adopted without objection, a confidential informant ("CI") had purchased crack cocaine from Beasley and others at the Alton residence at least one hundred times during a four-month period and, in January 1999, the CI made a controlled purchased from Beasley of .7 grams of crack. Beasley twice admitted to selling drugs for her live-in boyfriend, Parker, and was discovered at the Alton residence with money that she claimed she received from Everage. Additionally, Kimberly Brown admitted that Beasley delivered crack to her on several occasions. See *United States v. Morrison*, 207 F.3d 962, 968 (7th Cir.2000) (corroboration by even witnesses of unproven credibility may imbue statements with sufficient indicia of reliability).

Beasley nonetheless argues that the district court should have discounted Everage's statements because she did not have

the opportunity to cross-examine Everage at the sentencing hearing. We have observed, however, that the guidelines expressly permit the use of hearsay evidence that has "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3; *see Szakacs*, 212 F.3d at 352, and have noted specifically that agents' interviews with witnesses are allowed, *see Szakacs*, 212 F.3d at 352. *See also Morrison*, 207 F.3d at 968–69 (absence of testimony of individuals whose statements formed basis of PSR's drug-quantity calculation was not error, where district court possessed sufficiently reliable evidence). Further, statements against penal interest, such as Everage's, are deemed sufficiently reliable for use at sentencing. *See Szakacs*, 212 F.3d at 352–53.

Beasley also contends that the district court should have disregarded as inconsistent Everage's statements about the quantity of crack cocaine she received from Beasley. Beasley points out that Everage told Sergeant Adams after her probation violation arrest in February 1999 that she got six kilograms from Parker through Beasley in less than nine months. Then, in June 1999, Everage spoke with Agent Watson, and he came away with the understanding that the amount of crack Everage received from Beasley was just under 500 grams. In August 1999, however, Everage apparently told Watson that her multiple purchases from Beasley totaled about one kilogram. The district court resolved the perceived differences by using the most conservative estimate from the June 1999 statement and then subtracting for the time Beasley was in Missouri.

We have said that a sentencing judge's credibility determinations "are accorded exceptional deference." *Johnson*, 227 F.3d at 813. The district court is entitled to credit even the statements of "an admitted liar, convicted felon, large scale drugdeal-ing, paid government informant." *Id.* (internal quotations and citations omitted). Beasley is correct that we require a district judge faced with a witness's conflicting estimates of the amount of drugs bought or sold to explain why he or she credited one account over the others, *see, e.g., United States v. McEntire*, 153 F.3d 424, 436 (7th Cir.1998); *United States v. Acosta*, 85 F.3d 275, 282 (7th Cir.1996); *United States v. Beler*, 20 F.3d 1428, 1435 (7th Cir.1994), but Beasley never asked the district court to supply reasons for using the most conservative estimate. Further, we believe that Beasley overstates the perceived inconsistencies between Everage's statements. Everage's February 1999 statement—that she had been getting an ounce of crack a day since May 1998 (thus totaling over six kilograms)—was an estimation of "how much crack cocaine she was suppl[ied] by Parker *either directly or through* Angel Beasley." (emphasis supplied) It did not, as Beasley contends, directly implicate Beasley in the entire six kilograms. Beasley nonetheless appears to construe Adams's ensuing testimony, which affirmed that "it was always crack cocaine that [Everage] obtained from Sam Parker through Angel Beasley," as an implication that Beasley was responsible for the entire six kilograms. The thrust of the government's inquiry, however, was not *who* was delivering the drugs but *what kind of drugs* were being delivered.

As to Everage's June 1999 statement—that she bought about $100 of crack cocaine from Beasley every day from May 1998 until her sale to the undercover agent in March 1999—it was the *agent* who estimated the quantity of drugs distributed based on his knowledge of their street value. Everage's August 1999 proffer one month later was her own approximation of the *total* amount of drugs Beasley sold her—about one kilogram. The June 1999 statement reflects an approxi-

mation of Everage's daily purchases from Beasley, and the August 1999 statement a response to a question concerning the totality of those purchases. The district court merely credited *the agent's* estimation, based on the *dollar value* of the crack, of the quantity of drugs Beasley sold Everage on a daily basis. *See, e.g., Zehm*, 217 F.3d at 514–15 (witness's inconsistent statements as to period during which he was selling drugs to defendant was not consequential); *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir.1995) (drug quantity calculation sufficiently reliable despite internal inconsistencies in admitted drug users' statements, where accounts were mutually corroborating and estimates were conservative); *United States v. Carter*, 999 F.2d 182, 187 (7th Cir.1993) (witness's inconsistent statements as to drug quantity she bought from defendant not of such a nature so as to disregard her testimony). Thus, we believe that the information on which the district court relied to calculate Beasley's relevant conduct was sufficiently reliable.

Accordingly, the decision of the district court is AFFIRMED.