**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2007
Decided March 13, 2007

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2506

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

 *v.*

JOHN BEARD,
 *Defendant-Appellant.*

Appeal from the United States
District Court for the
Central District of Illinois.

No. 02 CR 30040

Jeanne E. Scott,
*Judge.*

**O R D E R**

 John Beard was convicted by a jury of one count of possession of 500 or more grams of cocaine with the intent to distribute, 21 U.S.C. § 841(a)(1), one count of possession of five or more grams of cocaine base (crack) with intent to distribute, *id.*, and one count of carrying a firearm during a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A). He was sentenced to 248 months' imprisonment followed by eight years' supervised release. After an unsuccessful appeal, Beard moved to vacate his sentence, arguing, in part, that it was based on a witness's false testimony concerning the quantity of drugs for which he should be held accountable as relevant conduct. The district court granted an evidentiary hearing on this issue, and subsequently granted him relief on that claim and ordered that Beard be resentenced. The court ultimately sentenced Beard to the same term of imprisonment imposed after his jury trial. Beard now appeals, maintaining that

his new sentence was also based on the same false witness testimony. Because it was within the district court's discretion to find the witness credible, we affirm.

Beard pleaded not guilty to the three charges against him. Beard's first trial resulted in a hung jury. At Beard's second trial in November 2002, Homer Harris, who was cooperating with the government as part of a plea agreement, testified that he met Beard in late 1997 when Beard regularly delivered kilogram quantities of cocaine to Homer's roommate, Marcus Harris.[1] Homer testified that in 1998, after Marcus was incarcerated for delivery of a controlled substance, Homer started obtaining cocaine directly from Beard, usually in half-kilogram amounts, every two weeks for at least six months. In October 1999 Homer and Beard agreed to a drug sale, according to Homer, and Homer borrowed money from an acquaintance who had recently become a police informant. The informant told the police about the sale and that it was about to occur in a K-Mart parking lot in Chicago. Based on that tip, local police and DEA and FBI agents surveyed the parking lot and observed Homer arrive in a car, then drive across the street to a Wendy's parking lot where he pulled up alongside Beard's car. Beard got out of the passenger side of the car and got into Homer's car. After a few minutes, Beard left Homer's car and got back into his own. Then both cars drove off. Shortly thereafter, the police stopped both cars. They obtained Beard's consent to search the car he was riding in and found the drugs and a loaded gun in the closed center console of the front seat, hidden under some papers. Neither Beard nor the driver owned the car, but Beard had borrowed it eight months earlier from the owner and had been seen driving it occasionally since then. However, he was not the only person who used the car during this time, and the papers apparently did not belong or pertain to him or the person who was driving with Beard during the police stop. The police searched Homer's car and found about $13,800 in cash. After the government presented its evidence against Beard, defense counsel informed the court that Beard did not intend to put on any evidence, and the defense rested.

The jury convicted Beard on all three counts. Homer's trial testimony about the quantity of cocaine Beard distributed was adopted in Beard's PSR and used by the district court to calculate his base offense level and sentence. Based on Homer's testimony, the court determined that Beard was responsible for 8890 grams of cocaine as relevant conduct. Beard did not object to the PSR. In May 2003 Beard was sentenced to a term of 248 months' imprisonment, consisting of 188 months on each of counts one and two to run concurrently, and 60 months on count three to run consecutively to counts one and two, followed by eight years' supervised release.

---

[1] Homer Harris and Marcus Harris are childhood friends but are not related. To avoid confusion, we will refer to both men by their first names.

Beard appealed his conviction on the firearm count, arguing that no reasonable jury could have found him guilty beyond a reasonable doubt because the evidence against him was so thin. He asserted that the government had not proved that the gun found in the car belonged to him and that therefore there was insufficient evidence to convict him under § 924(c)(1)(A). This court affirmed his sentence, noting that Beard had given the jurors no alternative explanation for the gun's presence and they were left with only the government's straightforward theory that it belonged to Beard. *United States v. Beard*, 354 F.3d 691, 692 (7th Cir.), *cert. denied*, 542 U.S. 915 (2004).

In May 2005 Beard moved to vacate his conviction, 28 U.S.C. § 2255. He raised three grounds: (1) that he had received ineffective assistance of counsel; (2) that his sentence was based on false testimony concerning the quantity of drugs for which he should be held accountable; and (3) that his due process rights were violated because the quantities of drugs attributable to him as relevant conduct and his criminal history were not proven beyond a reasonable doubt before a jury. Beard submitted three affidavits in support of his assertions.

The district court denied Beard relief on claims one and three, but ordered an evidentiary hearing on his second claim—that the court relied on false testimony at sentencing to determine the quantity of drugs for which he should be held accountable. *See Olmstead v. United States*, 55 F.3d 316, 319 n.1 (7th Cir. 1995). Beard argued that Homer perjured himself when he claimed that he had bought several kilograms of cocaine from Beard over a six-month period. The government admitted to the court that the amount of cocaine attributed to Beard in his PSR as relevant conduct was based on inconsistent information from Homer and agreed that the relevant conduct amount should be revised.

At the hearing, Antonio Shaw, a federal prisoner housed in Pekin, Illinois, testified that while he was detained on federal drug charges in the Pike County Jail, he overheard Homer and three other detainees discussing how they were going to set up other alleged drug dealers and attribute large drug quantities to them in order to obtain significant reductions in their own sentences. Shaw testified that it was widely known among inmates that Homer did this. In particular, Shaw testified that he heard Homer state he had only met Beard once or twice and had bought no more than one kilogram of cocaine from him at a time, but that he would testify that he had bought at least 15-20 kilograms of cocaine from him.

Homer also testified at the evidentiary hearing and denied having the conversation Shaw testified to. He also maintained that his testimony at Beard's trial was truthful, although he was mistaken when he testified regarding the arrest date of his roommate, Marcus. Homer acknowledged that he was unsure of exact dates that Beard sold him drugs, but he maintained that the drug sales did occur,

and that when he was unsure of a particular drug amount, he would "lessen the amount than over-exaggerate the amount." DEA Special Agent Glen Haas also testified that when he first obtained information about Beard from Homer in June 2001, he told Homer not to exaggerate the amount of drugs he attributed to others.

At the conclusion of the evidentiary hearing, the district court acknowledged that there was a problem with the relevant conduct previously attributed to Beard. However, the district court still found Homer more credible than Shaw because Shaw's testimony was uncorroborated and he bore personal animosity toward Homer because he considered him a "snitch." The court found Homer's testimony "credible with respect to the underlying incident that led to the arrest" because it was corroborated by an agent who observed the cars in the Wendy's parking lot. However, the court concluded that the dates and transactions Homer recounted to the police and in his testimony were "not entirely possible" and that he may have "confused some of the transactions he observed between Marcus Harris and the defendant with face to face confrontations he's had with the Defendant himself." Because of the apparent overcounting of cocaine in Beard's PSR, which led to an "inflated" sentence, the court granted Beard relief on claim two of his § 2255 motion and ordered a new PSR and a resentencing hearing.

A fourth revised PSR, dated April 4, 2006, was prepared for the resentencing hearing. The findings in the PSR, based largely on Homer's statements, held Beard accountable for 2765.45 grams of cocaine as relevant conduct, down from the 8890 grams used to calculate his first sentence. Beard objected to the relevant conduct described in the PSR. He argued primarily that Homer's testimony should not be relied upon because Homer admitted he could not remember specific dates on which he allegedly engaged in drug transactions with Beard, Homer testified inconsistently about dates that he could remember, and Homer had an incentive to ascribe false relevant conduct to Beard in order to obtain a reduction in his own sentence. At the resentencing hearing, Beard called Marcus as a witness, and Marcus contradicted some of Homer's testimony.

The district court overruled Beard's objections to the PSR's recommendations. The court found that Homer was more credible than Marcus, noting that Homer had made statements against his own interest from the beginning of Beard's prosecution. The court also identified aspects of Marcus's testimony that it did not believe, such as Marcus's attempt to deny that one of his transactions with Beard involved the sale of drugs. The court also found that Homer was credible with respect to the amounts stated in the fourth PSR and that the government had proved relevant conduct by a preponderance of the evidence. The court determined that Beard should be held accountable for 16.4 grams of cocaine base and 3769.55 grams of cocaine, consisting of 1004.1 grams of cocaine on count one, 16.4 grams of cocaine base on count 2, and 2765.45 grams of cocaine as

relevant conduct, as set out in Beard's final PSR. The district court found that Beard had an offense level of 32 on the first two counts and was in criminal history category V, resulting in a guidelines sentencing range of 188 to 235 months. The third count carried a mandatory minimum sentence of 60 months, to run consecutively to his other terms of imprisonment. Accordingly, the district court resentenced Beard to the same term it originally imposed, 188 months' imprisonment on the first two counts, followed by 60 months, for a total of 248 months, and eight years' supervised release. Beard now appeals his resentencing.

On appeal, Beard argues that the district court clearly erred when it used information obtained from Homer Harris in determining his sentence because Homer is not a credible source. A district court's calculation of the drug amount attributable to a defendant is a factual finding that will not be disturbed absent clear error. *United States v. Marty*, 450 F.3d 687, 689-90 (7th Cir. 2006). A finding of fact is clearly erroneous "only when, on the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000) (internal quotation marks omitted). In determining relevant conduct, the district court is entitled to estimate drug quantity using testimony about the frequency of dealing and the amount dealt over a specified period of time. *United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006). A sentencing court's credibility determinations are accorded exceptional deference. *Johnson*, 227 F.3d at 813. The district court is entitled to credit testimony that it finds reliable even when that testimony is provided by an "admitted liar, convicted felon, or large scale drug-dealing, paid government informant." *Romero*, 469 F.3d at 1147 (citations omitted).

First, Beard argues that there is a problem with the findings in paragraph 22 of his PSR. That paragraph, partially based on information provided by Homer, indicates Beard is responsible for 1000 grams of cocaine he allegedly sold to Marcus at the apartment Homer and Marcus shared on Allen Street in Springfield, Illinois, in 1998. However, Homer testified at Beard's second trial that he witnessed these transactions between Beard and Marcus at the apartment in "late" 1997. At the evidentiary hearing, Homer did not state whether the sales occurred in 1997 or 1998; instead he said that he observed drug transactions between Marcus and Beard until Marcus was arrested (which in fact occurred on September 7, 1999). At the resentencing hearing, Beard offered evidence to show that Homer did not live at this apartment until July 1998. Beard argues that because there is a discrepancy between Homer's trial testimony and the events described in paragraph 22, the government has the burden to produce evidence from which the district court can make a reliable finding.

The district court did not clearly err when it credited Homer's testimony on this issue. Contrary to Beard's assertion, when the district court relies on

information from a defendant's PSR in sentencing, the defendant bears the burden of showing that the PSR is inaccurate or unreliable. *Romero*, 469 F.3d at 1147. Beard has not presented a compelling reason for overturning the district court's credibility determination with respect to this issue. *See id*; *United States v. Noble*, 246 F.3d 946, 951 (7th Cir. 2001). Homer acknowledged during the evidentiary hearing that he was not sure of the dates of the drug transactions. Nevertheless, the district court found Homer's testimony that the drug sales occurred to be credible. Moreover, Agent Haas's testimony at the evidentiary hearing corroborated Homer's testimony. Homer told Haas in 2001 about the drug sales he observed between Beard and Marcus but was unsure of the precise dates. In addition, the district court noted that drug dealers often use other people's residences for their deals, and so the precise dates that Homer rented an apartment are ultimately irrelevant to whether the events occurred.

Second, Beard challenges paragraph 23 of his PSR, which holds him accountable for 1000 grams of cocaine that he allegedly threw into a trash can at Burger King, which Marcus and Homer later recovered. At Beard's trial, Homer testified that Marcus told him that Beard put the drugs in the trash can. At the resentencing hearing, Marcus denied telling Homer that Beard threw a kilogram of cocaine into the Burger King trash.

The district court did not clearly err in crediting Homer's testimony over Marcus's with respect to this issue. Because the Federal Rules of Evidence do not apply to sentencing proceedings, the district court may consider evidence that is not otherwise admissible, including hearsay, so long as it possesses sufficient indicia of reliability. *Johnson*, 227 F.3d at 813; *United States v. McEntire*, 153 F.3d 424, 435 (7th Cir. 1998); FED. R. EVID. 1101(d)(3); 18 U.S.C. § 3661; U.S.S.G. § 6A1.3. The hearsay statement is sufficiently reliable when considered along with Homer's testimony that he observed repeated drug sales between Marcus and Beard and also was present with Marcus when they took the cocaine out of the trash can. The district court considered Marcus's testimony at the sentencing hearing less credible than Homer's because Homer had made statements against his own interest from the beginning of Beard's prosecution and because Marcus gave testimony at sentencing that was inconsistent with other evidence of drug sales between Marcus and Beard. In evaluating evidence, district court judges are responsible for credibility determinations, including the weighing of the testimony of one witness over another. *United States v. Ocampo*, 472 F.3d 964, 966 (7th Cir. 2007). District court determinations of credibility are entitled to special deference, since they often depend on a witness's demeanor and appearance on the stand, from which appellate courts are totally removed. *United States v. Peterson-Knox*, 471 F.3d 816, 823 (7th Cir. 2006). We will not upset the district court's finding on this issue absent exceptional circumstances. *United States v. Zaccagnino*, 467 F.3d 1044, 1048 (7th

Cir. 2006) ("[A] trial court's assessment of credibility can virtually never amount to clear error.").

Finally, Beard challenges paragraph 24 of his PSR, which holds him accountable for 765.45 grams of cocaine, based on Homer's testimony that he bought cocaine twice from Beard in Chicago. Beard claims that these sales could not possibly have occurred as Homer described. At the time of Beard's first sentencing, Homer told DEA agents that he bought drugs from Beard over a period of about six months, which led to the inflated quantity of cocaine attributed to Beard as relevant conduct. In contrast, Homer testified at the evidentiary hearing that he did not deal directly with Beard until after Marcus was arrested, on September 7, 1999. He also did not deal with Beard after Beard was arrested, on October 12, 1999. This leaves a five-week window of time. Beard argues that Homer's testimony at the evidentiary hearing is still incredible because the events he described would have spanned more than five weeks.

Beard's fourth PSR states that Homer found cocaine hidden by Marcus approximately two weeks after Marcus was arrested (around September 21), and then two weeks after that (around October 5) Marcus gave Homer Beard's pager number. Homer arranged the first cocaine deal, which occurred a few days later (at the earliest, on October 6). A second cocaine deal occurred one to two weeks after that. At this point, at least 36 days would have elapsed. According to Beard, if Homer made the initial purchase from Beard on October 6, Homer could not have returned a week later for the second sale on October 13 because Beard had already been arrested on October 12. Beard asserts that because the events could not have occurred as described in the PSR, the government was required to provide some evidence to show that the information was reliable, and it has not done so. Therefore, Beard asserts that the district court clearly erred.

The district court did not clearly err in crediting Homer's testimony with respect to this issue. We will overturn a credibility determination on the ground that the witness's testimony was incredible as a matter of law only if "it would have been physically impossible for the witness to observe what he described, or it was impossible under the laws of nature for those events to have occurred at all." *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001). Any suggestion of "impossibility" with respect to this issue is cured by allowing Homer's recollection of events to be substantially correct but off by a few days. Homer acknowledged at the evidentiary hearing that he was unsure of the precise dates of the drug transactions. The district court believed that Homer was credible overall despite some discrepancy as to dates; the court would not have clearly erred if it assumed that Homer's recollection of events that happened seven years earlier might be off by a day or two.

AFFIRMED.