In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2899

United States of America,

Plaintiff-Appellee,

v.

John Noble,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 CR 6--Barbara B. Crabb, Judge.

Argued December 6, 2000--Decided April 5, 2001

Before Bauer, Posner, and Williams, Circuit Judges.

Bauer, Circuit Judge.  John Noble was convicted
of possession of controlled substances with
intent to distribute under 21 U.S.C. sec.sec.
841(a) and 846. The district court made findings
as to the amount of drugs that Noble distributed,
determined Noble's base sentence according to the
United States Sentencing Guidelines ("Sentencing
Guidelines"), and added eight levels of
enhancement based on three aggravating factors.
Noble appeals his sentence on two grounds. First,
he contends that the district court committed
factual sentencing errors. Second, he maintains
that he was sentenced above the statutory maximum
in violation of Apprendi. We vacate Noble's
sentence and remand for proceedings consistent
with this opinion.

I.  Background

Noble dealt drugs over a tri-state area. Noble
sold the drugs himself, and enlisted a small
group to aid him which included Jeff Spaeth,
Steve Jobe, James Burke, Sam Groff, Mark Ackley,
and Noble's girlfriend Dawn Henning. Group
members transported, sold, or stored drugs in
their homes for Noble.

Jeff Spaeth bought a significant quantity of
cocaine from Noble over a two year period. To the
police, he estimated the amount at 50 ounces, but

at trial he testified that it totaled 100 ounces. Spaeth allowed Noble to store cocaine in a safe in his trailer. Noble carried a key to Spaeth's trailer so he could access the drugs while Spaeth was not home. Spaeth had a long history of cocaine and marijuana use.

Steve Jobe delivered cocaine for Noble from 1996 until the fall of 1997. Initially, Jobe merely acted as a driver, shuttling Noble mainly to Janesville, Wisconsin so Noble could sell cocaine to Spaeth. Eventually, Jobe took over Noble's delivery role, dropping off drugs and picking up proceeds from Spaeth. Noble paid Jobe between $25 and $50 for each trip. Also, on at least 10 nights, Jobe accompanied Noble on his routine drug deals at a series of strip clubs. Jobe assisted by carrying the drugs and passing Noble individual packets to sell. When Jobe was with Noble, Noble sold between 1/2 and 1 ounce of cocaine per night. Noble ultimately told Jobe that he sold drugs at these club roughly five nights per week for a year.

As Jobe's efforts slackened, Noble began to pay James Burke to transport drugs to Iowa, Illinois, and Wisconsin. Burke transported cocaine to Spaeth between 10 and 20 times, and marijuana to Mark Ackley 7 or 8 times. Noble negotiated the price and quantity sold. In exchange for Burke's services, Noble paid Burke's rent and provided him with cash and automobiles.

Noble temporarily lived with Sam Groff in Charles City, Iowa. Beginning in the fall of 1996, Groff began distributing marijuana for Noble, ferrying drugs from Illinois to Iowa. Groff sold roughly 14 pounds of marijuana. Groff stopped transporting Noble's marijuana when Noble moved back to Illinois. Noble replaced Groff with Mark Ackley. Ackley estimated that he sold roughly 40 pounds of marijuana over an estimated one year. The court found that the time frame of Ackley's dealing lasted 7 months.

Dawn Henning met Noble in 1992, and they developed a romantic relationship. Henning began working 3 to 4 nights per week at a strip club in January of 1996. Each night she worked, Noble gave her cocaine to sell. Henning used cocaine herself and became addicted. Noble moved in with Henning in 1997, and they shared a bedroom.

In 1997, the police raided the apartment Noble and Henning shared. The police found cocaine and marijuana, along with a calculator labeled with the name of Noble's old apartment complex, in a car parked in Noble's garage. In Henning and Noble's bedroom they found $2,400 in drug proceeds and a gun in Henning's closet. The

police arrested Noble and released him on bail. Desiring to avoid punishment, Noble convinced Burke to confess to owning the drugs found in Noble's garage. Burke was convicted and spent several months in jail before he recanted his confession.

The police revived their investigation of Noble. Noble was charged with and convicted of violating 21 U.S.C. sec.sec. 841(a)(1) and 846, offenses which have a statutory maximum of 20 years. The district court determined that Noble possessed or distributed 5 kilograms of cocaine and 31.06 kilograms of marijuana. In so determining, it relied on testimony from the following witnesses to attribute the following quantity of drugs to Noble:

Count I

| Source of testimony | Drug and Amount | Marijuana Equivalent |
| --- | --- | --- |
| Ackley | 50 lbs marijuana | 22.68 kg |
| Groff | 17.5 lbs marijuana | 7.948 kg |
| Spaeth | 100 oz cocaine | 567 kg |
| Jobe | 65 oz cocaine | 368.55 kg |
| Burke's car | 183.02 g cocaine | |
| | 4328 g marijuana | 37.04 kg |
| no source mentioned | 5 oz cocaine | 28.34 kg |

Total  1,031.36 kg

Count II

| Burke's car | 183.02 g cocaine | 37.04 kg |
| --- | --- | --- |
| | 439.8 g marijuana | |

Total  37.04 kg

Converting the cocaine to its marijuana equivalent for sentencing purposes, the judge determined that Noble was responsible for a total of 1,390.064 kilograms of marijuana. This total made Noble eligible for an enhanced sentence under 21 U.S.C. sec. 841(b)(1)(A)(vii), which carries a sentence range of 10 years to life imprisonment for those who possess 1000 to 3000 kilograms of marijuana. The judge imposed three sentence enhancements: a four-level organizer or leader enhancement, a two-level dangerous weapon enhancement, and a two-level obstruction of justice enhancement. Applying the Sentencing Guidelines, the judge combined Noble's criminal history level of III and his offense level of 40 to reach a sentencing range of 360 months to life. The judge imposed 360 months in prison.

Noble argues that the district court committed two factual errors in: (1) determining the quantity of drugs Noble possessed and distributed; and (2) assessing sentence enhancements not supported by sufficient evidence. Further, Noble argues that his sentence violates Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). We dispose of cases on factual rather than constitutional grounds when possible. See United States v. Westmoreland, Nos. 99-1491 & 00-1348, slip op. at 14 (7th Cir. Feb. 15, 2001). We therefore first proceed to Noble's factual challenges.

II.   Discussion

  A.   Factual Concerns

  Our review of the factual determinations in this case is challenging because key parts of the factual record are shallow. To fashion Noble's sentence, the district court necessarily engaged in a spate of credibility determinations involving evaluating the defendant's word against a witness's. We emphasize that uncorroborated evidence can be a sufficient basis for a sentence, see United States v. Johnson, 227 F.3d 807, 813 (7th Cir. 2000), and we are reluctant to disturb credibility determinations absent a compelling reason.

1.   Amount of Drugs

  Noble argues that the court committed three errors in determining the amount of drugs by: (1) committing a mathematical error when it aggregated the quantity of drugs in counts one and two; (2) double counting the drugs found in Noble's garage by including them in both counts; and (3) basing its determination of drug quantity on unreliable evidence. Noble correctly charges clear error in his first two contentions. First, when adding the quantity of drugs found in counts one and two, the district court mistakenly arrived at a total of 1,390.064 kilograms; the correct total is 1068.40 kilograms. Second, Noble and the government agree that the judge impermissibly double counted the 37.04 kilograms of drugs found in Burke's car. The drug quantity must therefore be reduced by that amount to a total of 1031.36 kilograms.

  Noble next argues that the court erred by basing its findings on the unreliable testimony of Spaeth, Jobe, Ackley, and Groff. We accord great deference to the district court's sentencing determinations, including drug quantity, and we will not overturn its findings of fact unless they are clearly erroneous. See United States v. Berthiaume, 233 F.3d 1000, 1002

(7th Cir. 2000) (citations omitted). However, there are limits to our deference. The court's sentence determinations must be based on reliable evidence, not speculation or unfounded allegations. See United States v. Pigee, 197 F.3d 879, 889 (7th Cir. 1999) (citation omitted); United States v. Howard, 80 F.3d 1194, 1204 (7th Cir. 1996) ("Estimates of the drug quantities attributable to the defendant are permissible, of course, so long as they are based on evidence possessing sufficient indicia of reliability and not 'nebulous eyeballing.'"). The government bears the burden to prove the facts supporting the sentence by a preponderance of the evidence. See Johnson, 227 F.3d at 813.

We address Noble's most serious challenge first. Noble urges us to reverse the district court's decision to attribute 100 ounces of cocaine to him based on Spaeth's testimony. Spaeth's inconsistent estimation of drug quantity, 50 ounces in a police interview and 100 ounces under oath, required the district court to "undertake a 'sufficiently searching inquiry into the government's evidence to insure its probable accuracy.'" United States v. Galbraith, 200 F.3d 1006, 1012 (7th Cir. 2000) (citation omitted). In this case, the district court's inquiry was rather cursory. Combined with Spaeth's poor memory, no doubt caused by his extensive history of drug use, the district court's treatment of the discrepancy makes Noble's charge of error a close call. Our question about the adequacy of the district court's inquiry is heightened by its failure to designate the source of 5 ounces of cocaine which it attributed to Noble, and which we discuss below.

The district court credited Spaeth's testimony under oath, justifying its decision by noting that it was consistent with the rest of Spaeth's testimony. Spaeth explained the discrepancy between his estimates as follows: "getting more to being kept on record, when I admitted 50, it was a discussion with the officers. When it came time to have it written down legally, I realized it was more." Further, Spaeth provided the court with particulars that bolstered this 100 ounce estimate. Spaeth testified that he purchased cocaine from Noble for roughly two years. Initially he bought small amounts approximating 1/16 of an ounce, but his purchases increased, culminating in a 7 ounce buy. Spaeth estimated that on average, he purchased between 1 and 2 ounces of cocaine from Noble per week. Noble maligns Spaeth's credibility because Spaeth has a self-admitted poor memory and had a lengthy history of drug abuse. However, the district court is entitled to credit a broad range of testimony. See United States v. McEntire, 153

F.3d 424, 436 (7th Cir. 1998) (stating that the court may credit testimony that is "totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug-dealing, paid government informant.").

We have qualms about the district court's adoption of Spaeth's 100 ounce estimate. However, the burden at sentencing is merely a preponderance of the evidence, and our review of the district court's fact-finding and credibility determinations is highly deferential. A reading of the whole sentencing record reveals that this experienced judge was mindful of Spaeth's memory lapses. Ultimately, we conclude that the testimony and the judge's inquiry were sufficient to ensure the reliability of the 100 ounce estimate.

Next, Noble challenges as speculative and unreliable Jobe's testimony establishing that Noble possessed 65 ounces of cocaine. Jobe's testimony is partly based on firsthand knowledge. He accompanied Noble to strip clubs for the purpose of selling cocaine, and on each occasion, he watched Noble sell between 1/2 and 1 ounce of cocaine. Jobe also testified that Noble admitted to selling cocaine at the strip clubs five nights a week for over a year. The district court is entitled to estimate drug quantity using testimony about the frequency of dealing and the amount dealt over a specified period of time. See United States v. Durham, 211 F.3d 437, 444 (7th Cir. 2000) (affirming district court's estimate of quantity by considering testimony of the frequency of dealing and a conservative estimate of the amount dealt per transaction over a two year period). In calculating Noble's quantity, the district court conservatively assumed that Noble sold 1/2 ounce of cocaine five nights a week for a year, resulting in a total of 130 ounces. The district court cautiously divided the 130 ounces figure in half, arriving at a total of 65 ounces of cocaine.

Noble charges that Jobe was not a credible witness because he is a "convicted felon and admitted drug user/ dealer." Noble's challenge falls short. The district court is entitled to credit testimony from people with Jobe's "credentials." See McEntire, 153 F.3d at 436. In the absence of inconsistency in a witness's story, we defer to the district court's determination of witness credibility, which "can virtually never be clear error." Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 575 (1985). The detail in Jobe's testimony is consistent and sufficient to demonstrate its reliability. Further, Jobe is not "speculating" about the frequency of Noble's dealing. Noble

himself provided Jobe with this information. Noble protests that such evidence is hearsay, however, we believe this statement by Noble against his interest was admissible. Even if it is hearsay, "[h]earsay evidence is permissible at sentencing where the rules of evidence do not apply." Berthiaume, 233 F.3d at 1003 (citing United States v. Morrison, 207 F.3d 962, 967 (7th Cir. 2000)). The district court did not err when it attributed 65 ounces of cocaine to Noble.

Noble challenges the inclusion of what he calls "the mysterious five ounces." Although the district court did not explicitly state the source of the cocaine, the record clearly shows the source. Jobe testified that he assisted Noble in selling between 5 and 10 ounces of cocaine at strip clubs. The district court was entirely justified in relying on testimony based on Jobe's firsthand experience, and in choosing to attribute a conservative 5 ounces of cocaine to Noble.

Noble urges that the judge has committed clear error by engaging in calculations to determine the amount of drugs Ackley and Groff distributed for Noble when the witnesses themselves offered lower estimates of the absolute amounts. The district court rejected Ackley's estimate that he received 40 pounds of marijuana from Noble, and attributed 50 pounds instead. The court calculated that Noble distributed 17.5 pounds of marijuana through Groff, rather than the 14 pounds Groff estimated. The government argues, and we agree, that if error occurred here, it was harmless. Even if the district court accepted the witness's lower estimates, they, by themselves, would not decrease the drug quantity below 1000 kilograms.

2. Sentence Enhancements

Noble further argues that the sentence enhancements were erroneous because they are based on unreliable evidence. We review the district court's sentence enhancement determinations for clear error. See id. at 1002. Again, the government bears the burden of proof by a preponderance of the evidence. See Johnson, 227 F.3d at 813. The court imposed an enhancement for Noble's role as an organizer or leader, the connection between a deadly weapon and the drug offense, and Noble's efforts to obstruct justice. We address them in turn.

a. Organizer or Leader Enhancement

Noble challenges his four-level organizer or leader enhancement. Such an enhancement is merited upon a finding that "the defendant was an

organizer or leader of criminal activity that involved five or more participants or was otherwise extensive" U.S.S.G. sec. 3B1.1(a). Comment 4 directs the sentencing judge to consider seven factors: (1) exercise of decision making authority; (2) nature of participation in the commission of the offense; (3) recruitment of accomplices; (4) claimed right to a larger share of the fruits of the crime; (5) degree of participation in planning or organizing the offense; (6) nature and scope of the illegal activity; and (7) degree of control and authority exercised over others. See U.S.S.G. sec. 3B1.1(a) cmt. 4.

Justifying the enhancement, the district court emphasized that Noble had more than a buyer-seller relationship with Spaeth, Jobe, Burke, Groff, and Henning. Noble provided drugs for the whole distribution scheme. He controlled the drug price and delivery and fronted drugs to Spaeth. He used his compatriots to insulate himself from some of the perils of dealing by directing them to engage in the necessary, but risky behavior of transporting and storing drugs. Noble frequently used Jobe, Henning, Groff, and Burke as mules to deliver his drugs to buyers. Noble stored drugs at Spaeth's trailer and in Jobe's car, and retained a key to Spaeth's trailer so he could access the drugs when Spaeth was not home. Noble exercised particular control over Spaeth and Henning because they depended on Noble to supply their own drug habits. Noble exercised such psychological control over Burke that Burke agreed to go to jail for Noble. We agree with the district court's assessment.

Noble asserts that he was a mere distributor and notes that being a distributor by itself does not justify application of the enhancement, see United States v. Mustread, 42 F.3d 1097, 1104 (7th Cir. 1994). But this protestation rings hollow. We agree with the district court's finding that Noble exercised the requisite control over Spaeth, Jobe, Burke, Groff, and Henning to support the "organizer or leader" enhancement.

b.  Dangerous Weapon Enhancement

Noble protests the two-level firearm enhancement applied under U.S.S.G. sec. 2D1.1(b)(1). The firearm enhancement should be applied "if a dangerous weapon (including a firearm) was possessed" "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. sec. 2D1.1(b)(1) & cmt 3. Police found the gun in Henning's closet in the bedroom Noble shared with her. A loaded clip lay next to the gun, and drug proceeds were present in the room.

Noble argues that the evidence does not tie the gun to him and that it is clearly improbable that the gun was used in connection with drug distribution. The government must prove possession by a preponderance of the evidence; the burden to show a clearly improbable connection then falls on the defendant. See Berthiaume, 233 F.3d at 1003-04.

The district court found that the gun belonged to Noble. The court credited Henning's testimony that Noble placed the gun in her closet. We are reluctant to disturb this credibility judgment. In addition, the district court found that the connection between the gun and his offense was probable. "'An enhancement under sec. 2D1.1(b)(1) is appropriate for simple, and entirely passive, possession' of a firearm. . . . The proximity of a weapon to drug proceeds provides a sufficient nexus to conclude that 'it was not clearly improbable that the gun was connected with the offense.'" Johnson, 227 F.3d at 814 (citations omitted). Given that the gun and the drug proceeds were located in the same room, the district court was correct to impose the enhancement.

c.  Obstruction of Justice Enhancement

Last, Noble challenges the enhancement for obstructing justice. This enhancement is merited when the defendant "wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of . . . prosecution . . . of the instant offense of conviction" including "committing, suborning, or attempting to suborn perjury." U.S.S.G. sec. 3C1.1 & cmt. 4(b). The judge found that Noble committed perjury during his testimony by lying about his reasons for running from his home during the police raid, by coaching and orchestrating Burke's false confession and paying him for it, by falsely denying that he owned the gun in the closet, by untruthfully professing that he did not deal drugs, and by lying about lacking knowledge about the safe in Spaeth's apartment and the drugs in Burke's car.

Noble argues that the judge erred because her finding of perjury is supported only by the testimony of government witnesses. True, but this is no reason to overturn the judge's determination. See McEntire, 153 F.3d at 436. Regardless, the district court's finding rested on other evidence as well. The testimony of Jobe, Henning, and Burke, along with Burke's unconvincing cover-up attempt, support the judge's finding that Noble committed perjury when he denied involvement in the cover-up. Noble's calculator and Burke's testimony attribute to

Noble knowledge of the drugs found in Burke's car. Testimony of at least five witnesses link Noble to drug dealing. The district court did not impose the obstruction of justice penalty in error. The district court's factual errors are harmless because taking them into account, Noble still possessed or distributed 1000 kilograms or more of marijuana and marijuana equivalent. Therefore, we turn to Noble's constitutional argument.

B. Constitutional Analysis

Noble argues that his sentence must be vacated under the Apprendi doctrine, which requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." Apprendi v. New Jersey, 120 S. Ct. 2348, 2363-64 (2000). Noble's drug quantity was neither charged in the indictment nor sent to the jury. Noble raises the Apprendi issue for the first time on appeal, so we review for plain error. See United States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000).

To justify a finding of plain error, "[t]here must be an 'error' that is 'plain' and that '[a]ffects substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993). If the above three criteria are satisfied, we may, in our discretion vacate Noble's sentence, provided that we find that the district court committed an error that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id.; see also Johnson v. United States, 520 U.S. 461, 467 (1997). The first three criteria are clearly satisfied. We have held that Apprendi applies to sec. 841(b)(1)(A) & (B), which, based on drug quantity, provide enhanced drug penalties above the basic statutory maximum allowed by sec. 841(b)(1)(C). See Westmoreland, Nos. 99-1491 & 00-1348, slip op. at 19 (listing cases and detailing the history and rationale for this decision); Nance, 236 F.3d at 824-25 (listing cases and explaining this holding). Noble's case constitutes clear error because his drug quantity was not charged in the indictment or determined by the jury. We recognize that Apprendi was not the law at the time the district court judge conducted this trial. However, for an error to be plain, it is sufficient for it to be "clearly contradictory to the law at the time of appeal." Johnson, 520 U.S. at 468. The error substantially prejudiced Noble's rights by extending his sentence 10 years in excess of the statutory maximum.

We must now decide whether this case triggers

our discretion to reverse by implicating the fairness, integrity, or reputation of the judicial process. We have refused to find such concerns implicated when evidence supporting a sentence above the statutory maximum is overwhelming. See United States v. Patterson, 97-3159, 97-3163, 97-3683, 98-1265, 98-1981 & 98-3115 slip op. at 2 (7th Cir. Mar. 2, 2001); United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001); Nance, 236 F.3d at 826. However, Noble's case is characterized by limited physical evidence and minimal corroborating testimony. Noble disputed the drug quantity for which he was held responsible. Noble's sentence necessarily hinged to a significant degree on the district court's credibility determinations. The judge's finding that Noble sold 100 ounces of cocaine to Spaeth relied wholly on Spaeth's estimate. Noble raised non-frivolous concerns about Spaeth's ability to recall the amount of drugs he purchased over two years of drug transactions which were inconsistent both in quantity purchased and frequency. Although the judge also referred to corroborating testimony supplied by Burke, such testimony is absent from the record. Likewise, the finding of 65 ounces of cocaine based on Jobe's testimony is far from ironclad. The judge's finding relied on Jobe's secondhand knowledge of the frequency with which Noble sold drugs at strip clubs, and his extrapolation regarding the quantity Noble sold. Although this case does not demand reversal with the same strength as Westmoreland, Nos. 99-1491 & 00-1348 slip op. at 23-25 (reversing sentence for plain error when sentence violated Apprendi, and key evidence of drug quantity was inadmissible to a jury), we cannot conclude that a reasonable jury would be compelled to find that Noble possessed or distributed 1000 kilograms or more of marijuana or marijuana equivalent. We vacate for plain error. The district court must re-sentence Noble within the statutory maximum 21 U.S.C. sec. 841(b)(1)(C) provides.

III.  Conclusion

   We VACATE Noble's sentence and REMAND for proceedings consistent with this opinion.