NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 12, 2009
Decided September 28, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-3829

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.*<br>JAVIER HERNANDEZ, *Defendant-Appellant.* | No. 05-CR-10062<br><br>Joe Billy McDade, *Judge.* |

## O R D E R

Javier Hernandez pled guilty to conspiring to distribute cocaine and cocaine base and received a sentence of 360 months' imprisonment. He appealed, and we remanded his case because we could not determine how the district court arrived at its drug quantity calculation of 159 kilograms. *United States v. Hernandez*, 544 F.3d 743 (7th Cir. 2008). On remand, the district court explained that its initial calculation was incorrect due to the on-the-spot nature of its calculation, and that the actual amount was 169 kilograms. It also stated that the error had no bearing on Hernandez's advisory guidelines range or on its choice of sentence. Finding no reversible error in the 360-month sentence Hernandez received, we affirm it.

## I. BACKGROUND

Javier Hernandez pled guilty to conspiring to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. The plea agreement stated that Hernandez pled guilty to distributing one kilogram of cocaine and it stated that, at the sentencing hearing, the government would present witnesses to establish any amount of cocaine over one kilogram that was attributable to Hernandez. The parties agreed in the plea agreement that the standard of proof the district court would apply in making the drug quantity determination was that of beyond a reasonable doubt.

A two-day sentencing hearing took place in January 2007. The government presented testimony from Darrell Daily, Troy Powers, Eric Keith and Melvin Harmon. Hernandez and Daily had known each other since high school. They met Harmon when the three were in the same halfway house in Chicago. After their releases from the halfway house, the three began dealing drugs. Hernandez supplied cocaine to Daily, who in turn sold it Harmon, who then supplied others. Powers testified that he bought cocaine directly from Hernandez. Hernandez did not testify at the hearing or present any witnesses.

The district court concluded that the total amount of cocaine attributable to Hernandez was 159 kilograms, a number it considered to be a "conservative estimate" in light of inconsistencies in some of the witnesses' testimony. The 159-kilogram finding yielded a base offense level of 38, which applied because Hernandez was responsible for at least 150 kilograms of cocaine. *See* U.S.S.G. § 2D1.1 A four-level leadership role enhancement and a two-level reduction for acceptance of responsibility resulted in an offense level of 40. With a criminal history category of IV, Hernandez's advisory guidelines range was 360 months to life. The court sentenced Hernandez to 360 months' imprisonment.

Hernandez appealed. We determined on appeal that the district court did not commit clear error when it credited the testimony of the government's witnesses, but that its calculation that Hernandez distributed 159 kilograms of cocaine was clearly erroneous. *United States v. Hernandez*, 544 F.3d 743, 747-49 (7th Cir. 2008). We remanded the case to the district court so that it could explain how it arrived at its calculation. *Id.* at 751.

After our remand, the district court ordered the parties to submit memoranda regarding the scope of the "resentencing hearing concerning the issue of drug quantity." The government argued that the hearing should be limited to recalculation of the drug quantity attributable to Hernandez based on the existing record. Hernandez contended that the district court needed to hear the witnesses testify again to reevaluate their credibility. The district court concluded that the hearing after remand was limited to recalculating the quantity of cocaine attributable

to Hernandez and that its other findings at the original sentencing would not be reviewed, nor would any other sentencing issues be taken up at the hearing.

The district court then held a hearing. It explained there that its initial 159-kilogram finding had been erroneous due to the on-the-spot nature of the calculation. Upon reconsideration of the testimony from the initial sentencing hearing, it found Hernandez responsible for 169 kilograms of cocaine. It based this conclusion on findings that Hernandez was responsible for distributing 4.25 kilograms in 2001, 82 kilograms in 2002, 25 kilograms in 2003, 57 kilograms in 2004, and 1 kilogram in 2005. The new calculation had no effect on Hernandez's sentence because the total amount attributable to him was still over 150 kilograms, and his offense level remained at 40. *See* U.S.S.G. § 2D1.1(c)(1). The district court reimposed its sentence of 360 months' imprisonment. Hernandez now appeals his sentence.

## II. ANALYSIS

### A. Scope of Remand

Hernandez contends that the district court improperly limited the scope of the remand, an argument we review de novo. *United States v. White*, 406 F.3d 827, 831 (7th Cir. 2005). In particular, Hernandez argues that the district court should have considered additional evidence, considered additional information that he believes bears on the 18 U.S.C. § 3553(a) factors, and allowed him to speak before announcing the sentence.

The district court must limit its consideration on remand to the issues remanded. *United States v. Husband*, 312 F.2d 247, 250 n.3 (7th Cir. 2002). In our opinion resolving Hernandez's initial appeal, we remanded for proceedings consistent with our opinion. *Hernandez*, 544 F.3d at 751. We said in our opinion that "the district court's drug quantity calculation was clearly erroneous because the district court failed to specify how it determined the amount of drugs attributable to Hernandez." *Id.* at 748. We explained that the district court's failure to "explain how it determined its drug quantity calculation" made it "impossible for us to find that there was no error in the calculation," *id.* at 750, and we remanded for proceedings consistent with our opinion. Our opinion identified only one issue for remand: an explanation from the district court as to how it arrived at its drug quantity calculation so that we could review that calculation. Moreover, we did not order a new sentencing hearing or vacate Hernandez's sentence. As a result, the district court was correct in limiting the scope of the remand as it did and in explaining its drug quantity calculation based on the record from the initial sentencing hearing. *See United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("If the opinion identifies a discrete, particular error that can be corrected on remand without the need for redetermination of other issues, the district court is limited to correcting that error."). In addition, there was no error in the district court's decision not to adjust Hernandez's sentence in light of his assistance in helping to talk another inmate out of suicide, and a three-level

acceptance of responsibility reduction he had received in a related case in the Northern District of Illinois. And although Hernandez complains that he was denied his right to allocute before sentence was imposed, he had the opportunity to speak at his initial sentencing hearing, and our remand for an explanation of the drug quantity amount did not require that he have this opportunity again.


B. Drug Quantity Determination

The purpose of our remand was for the district court to explain its drug quantity calculation, and it has done so. We review the district court's factual findings, including drug quantity, for clear error. *United States v. Noble*, 246 F.3d 946, 951 (7th Cir. 2001). We accord great deference to the district court's credibility determinations, and we are reluctant to disturb absent a compelling reason. *Id*. While a district court may not base its calculation on pure speculation, it may use a reasonable estimate when it determines the drug quantity for which a defendant will be held responsible. *United States v. Alviar*, 573 F.3d 526, 546 (7th Cir. 2009).


Although Hernandez maintains that the calculation was based on unreliable testimony, we already concluded in the initial appeal that the district court was not wrong in finding the witnesses credible. *Hernandez*, 544 F.3d at 748. He offers no compelling reason for us to conclude to the contrary now. An important consideration in the drug quantity determination was whether Daily received the majority of his cocaine in 2002 from Hernandez or from a different dealer (Herrera). The government maintained that most of the cocaine that Daily sold in 2002 came from Hernandez. Hernandez, on the other hand, highlighted inconsistencies between Daily's prior statements to authorities and his testimony in court as to exactly when Hernandez was no longer his main supplier. Daily initially told authorities that Herrera did not become his supplier until May 2003, while Daily stated at one point during his testimony in court that, "I was still purchasing from [Hernandez] in '02, it just wasn't that much."


While there were inconsistencies in Daily's testimony regarding how much of the cocaine he received in 2002 came from Hernandez, the district court sits in the best position to make these kinds of credibility determinations because it views the testimony firsthand. *See United States v. Dean*, 550 F.3d 626, 630 (7th Cir. 2008). In its order after our remand, the district court explained that it believed that Hernandez provided most of Daily's cocaine in 2002 for three reasons: (1) Daily stated in his earliest statement to authorities that Herrera did not become his supplier until May 2003; (2) Daily's plea agreement in a different drug conspiracy case stated that Herrera did not approach him to sell cocaine until the spring of 2003; and (3) Hernandez was present at Daily's wedding in 2003. These reasons are sound. We will only reverse the district court's factual findings only when we have a definite and firm conviction

that a mistake has been committed, *Noble*, 246 F.3d at 951, and we do not have such a conviction here.

In addition, at the hearing after our remand, the judge gave a thorough explanation for its drug quantity determination. It explained:

> In 2001, the court stated that based on Daily's testimony that he purchased and distributed 2 kilograms from Hernandez in December and later purchased 2.25 to 3 kilograms more, the total amount attributable to Hernandez for that year was 4.25 kilograms. In 2002, disregarding Harmon's testimony that he received only about 72 kilograms from Daily that year, the court estimated that Daily distributed at least 97 kilograms to Harmon, and because it believed the government's argument that Hernandez was Daily's supplier at least 90% of that year, the court found that Hernandez distributed 82 kilograms[1] in 2002. In 2003, Harmon testified that he purchased around 50 kilograms from Hernandez directly, though because he backtracked his estimate, the court only attributed 25 kilograms to Hernandez for 2003. The court declined to given any credit to Daily's testimony regarding what he obtained from Hernandez in 2003 because it contained too many inconsistencies. The court also accounted for the roughly 12 ounces Powers testified to purchasing in 2003, but chose to disregard his estimate that he purchased a total of 15-20 kilograms from Hernandez directly between 2003 and 2004. In 2004, Harmon testified to purchasing around 70 kilograms directly from Hernandez, but because he was not specific as to the frequency of quantities acquired, the court attributed a more conservative total of 57 kilograms to Hernandez for 2004. Finally, in 2005, the court found Hernandez responsible for the one kilogram found in Harmon's trunk during the sting operation that led to his arrest. In summary, based on the estimates the court felt to be most credible, the court found Hernandez responsible for distributing a total of 169 kilograms of cocaine.

This explanation reflects that the district court's method was consistent with our precedent for calculating drug quantity amounts. When there were inconsistencies regarding the amount distributed in a given year, the district court looked to the witnesses' testimony and adopted low points in the ranges as an estimate of the amount attributable to Hernandez. *See Noble*, 246 F.3d at 952 ("district court is entitled to estimate drug quantity using testimony about the frequency of dealing and the amount dealt over a specified period of time"). As we discussed, the district court also explained how it resolved Daily's testimony concerning the amount of

---

[1]It appears that because the court believed that Hernandez was Daily's supplier for 90% of 2002, the district court wanted to attribute 90% of 97 kilograms to Hernandez, which is actually 87 kilograms. The 82-kilogram figure is more beneficial to Hernandez.

cocaine he received from Hernandez in 2002 and 2003. And it explained that its initial 159-kilogram calculation was a mathematical error due to the on-the-spot nature of its computation. We conclude that the district court did not clearly err when it found that the government had proven beyond a reasonable doubt that Hernandez was responsible for over 150 kilograms of cocaine. Nor do we find his 360-month sentence, which was at the low end of the advisory guidelines range, unreasonable. We therefore uphold Hernandez's sentence.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.